CHRIST SCHRADI *et al. vs.* FERDINAND DORNFELD *et al.*

(Argued Dec. 14, 1892. Decided March 13, 1893.)

**Unincorporated Religious Society—Tenure of its Property.**

Where the conditions under which a religious society is formed and its property acquired require adherence to a particular creed or system of doctrine and church polity, a minority of the membership may insist upon carrying out the purposes for which the society was organized, and a majority will not be permitted to divert the common property to other uses, or to use it for the support and maintenance of doctrines, or a polity essentially at variance with its original constitution. The trust must be administered substantially in accordance with the intention of the original founders.

**Change in Forms may be Made by a Majority.**

But changes in matters of form in the conduct of the worship, or in the administration of the ordinances, not affecting the substance of doctrine or discipline, may be made by congregations, and determined by a majority of the members entitled to vote, in the absence of any other lawfully established rule.

**The Constitution of German Lutheran St. John's Church Construed.**

The constitution of the religious society to which the parties to this action belong, and over whose property the controversy arises, requires adherence to the creed of the Evangelical Lutheran Church, and the Augsburg Confession, and that the church should be connected with an orthodox synod, and recognized the synod of Buffalo, with which it became connected, to be an orthodox synod. *Held,* upon the evidence and facts as found in this case, that a determination by a majority vote of the congregation to change its synodical connection to another orthodox synod, and the mode of making and receiving the confession of private members, in anticipation of the communion, was not in violation of the constitution of the society, or contrary to the Lutheran standards or established usages, as interpreted and practiced by the great majority of orthodox Lutheran Churches in the United States.

**Dissolution of the Society and Division of its Property Denied.**

In such cases, where the property is lawfully applied to the common purpose to which it was devoted, and none of the members are prevented from participation in its use and enjoyment for such purpose, the court will not, at the instance of a seceding faction of the congregation, order a partition and division of the property.

Appeal by plaintiffs, Christ Schradi and others, from an order of the District Court of Washington County, *Williston*, J., made July 14, 1892, denying their motion for a new trial.

In November, 1860, a church congregation or religious society was formed, and was known as the German Lutheran St. John's Church. It placed itself under the jurisdiction of the Buffalo Synod, and selected a pastor belonging thereto. In 1874, Gerhard H. Lohman and wife conveyed about one and a half acres of land to Christ Schradi, John Westphal and Ferdinand Dornfeld and to their successors in office, as trustees of this society, in trust for the Lutheran Church. This land is about eighty rods west of the southeast corner of section twelve (12) in T. 29, R. 21, about four miles southwest from Stillwater on the road to St. Paul. On it the society have built a church, a parsonage and a schoolhouse.

On June 2, 1890, at a meeting duly called, it was resolved (twenty-nine for and eighteen against) that the society should withdraw from the Buffalo Synod and join the Synod of Ohio. Each party admitted that confession of sins is necessary as a condition precedent to the reception of the sacrament of the Lord's Supper. The matter in dispute was the manner in which such confession should be made. The majority held that private confession was not compulsory, but did not prohibit its use by those of the congregation who preferred that method. This was in accord with the teachings of the Synod of Ohio. The minority adhered to the rule that private confession was necessary, in accord with the teachings of the Synod of Buffalo.

The minority then withdrew from the society, and brought this action to enjoin the majority from using the church and schoolhouse, and to exclude them from any participation in the affairs of the society. Plaintiffs further prayed that in case the court determined that the majority could not be so enjoined and excluded, then that the property be sold, and the proceeds divided between the two factions in proportion to their respective numbers.

After hearing the evidence of the parties, the trial court dismissed the action on the merits, saying the matter in dispute is the manner in which confession shall be made. This is a question of practice or custom, and not a rule of faith or doctrine. Each party is free to

practice that mode of confession which to him seems most appropriate. This is a case in which the minority refuse to be bound by the action of the majority, where that majority has the right to determine. In such case the civil courts do not interfere.

*Stevens, O'Brien & Glenn* and *John D. O'Brien*, for appellants.

The defendants have not the power to leave the Buffalo Synod at all. This is expressly so decided in *Vasconcellos* v. *Ferraria,* 27 Ill. 237; Niblack, Mut. Ben. Soc., § 157.

If the defendants had a right to change from the Buffalo to the Ohio Synod, they clearly had no right to hand over the possession of the property. Such an act upon the part of the defendants is a breach of their duty toward the plaintiffs, and a violation of the plaintiffs' rights.

The position of the defendants is that either form of confession is permissible, and that it is a matter of choice to which Synod the society should adhere. By far the greater number of modern Lutherans do not insist upon private confession, and it is said that the Buffalo Synod is the only one that insists upon private confession. In case of the division of a religious corporation, both parties still adhering to the tenets and discipline of the organization, the property should be divided between them in proportion to their numbers at the time of separation. *Niccolls* v. *Rugg,* 47 Ill. 47; *Ferraria* v. *Vasconcellos,* 31 Ill. 25; Bacon, Ben. Soc., § 27; Niblack, Mut. Ben. Soc., §§ 157, 158, 159; *Gorman* v. *Russell,* 14 Cal. 531.

*Clapp & Macartney,* for respondents.

The plaintiffs had no right to withdraw from the congregation without reason, and when they withdrew, they forfeited their rights in the temporal property. *Winebrenner* v. *Colder,* 43 Pa. St. 244; *Baker* v. *Fales,* 16 Mass. 487; *Stebbins* v. *Jennings,* 10 Pick. 172; *Sawyer* v. *Baldwin,* 11 Pick. 492; *Dublin Case,* 38 N. H. 459; *Lewis* v. *Watson,* 4 Bush, 228; *Gibson* v. *Armstrong,* 7 B. Mon. 481; *Associate Reformed Church* v. *Trustees of Theological Seminary,* 4 N. J. Eq. 77; *Methodist Episcopal Church* v. *Wood,* 5 Ohio, 283; *Hadden* v. *Chorn,* 8 B. Mon. 70; *Deaderick* v. *Lampson,* 11 Heisk. 523; *Mc-*

*Ginnis* v. *Watson*, 41 Pa. St. 9; *Hendrickson* v. *Shotwell*, 1 N. J. Eq. 652; *First Baptist Church* v. *Witherell*, 3 Paige, 296; *Bundy* v. *Birdsall*, 29 Barb. 31.

This is a case where it is charged in the complaint, and denied in the answer, that certain members of an unincorporated religious society which holds the title to certain property, and which was organized for worship according to the faith and doctrine of the Lutheran Church, have violated the rights of the plaintiffs in that society by resolving to permit the administration of the holy sacrament to members of the congregation without requiring them to submit to a private confession, and that such action is contrary to the faith and doctrine of the Lutheran Church. The evidence is conclusive that the allegation is untrue, and that the faith and doctrine of the Lutheran Church is, that private confession is not absolutely required. The court finds the fact in accordance with this evidence. The plaintiffs, being compelled, practically to concede this, turn around and say, very well, perhaps you are right about the matters in controversy here, but we are owners in common with you in this property, and we are entitled to have it divided, no matter which is right. We cannot believe this court is prepared to enunciate such doctrine.

VANDERBURGH, J. It appears from the record that a religious society, unincorporated, known as the German Lutheran St. John's Church, was in existence and held religious services and worship upon the premises in controversy here from the 23d day of November, 1862, until June 2, 1890, and the persons named in the complaint were members of such society or congregation on the day last named. In 1874 one Lohmann executed and delivered a conveyance of the land in question to Ferdinand Dornfeld and others, therein named, and their successors in office, as trustees of the German Lutheran St. John's Church, above referred to, for the uses expressed in the deed as follows: "For the Lutheran Church, according to the symbolical books of the Lutheran Church, especially the Unaltered Augsburg Confession and the Smaller Catechism of Dr. Martin Luther; and also for a graveyard, parsonage, etc., or what buildings said church should find necessary to erect upon." The

society entered upon the premises, and the same year erected thereon a valuable church building, and a schoolhouse for the use of the children of the congregation, and have since erected a parsonage for the use of the pastor of the church. The funds necessary to purchase and improve the property were derived from the contributions made by the members of the society, and the property is now of the value of $5,000, and has continuously been appropriated and used by the members of the society for the purposes indicated in the deed of conveyance above mentioned. At the time of the organization of the society the members thereof adopted certain rules and regulations and a system of doctrine designated a "constitution" in the complaint, in which it was declared and agreed that the creed of the congregation was Lutheran, as contained in the symbolical books of the Evangelical Lutheran Church, subject to the Unaltered Augsburg Confession, and to the Smaller Catechism, and that the pastor of the church should belong to an orthodox synod; and, further, that the congregation and society did recognize the synod of Buffalo, N. Y., as an orthodox synod. The society accordingly placed itself under the jurisdiction of the Buffalo synod, and so continued to the 2d day of June, 1890, with pastors belonging to that synod. Both parties hereto recognize that synod as orthodox.

It is further found that at the time of the formation of the society, and ever since, it has been, and is, the faith, doctrine, and creed of the Lutheran Church, as contained in the books, confession, and catechism above referred to, as the same is interpreted by the great majority of theological writers, teachers, and pastors of that church, and as held and believed and practiced by the great majority of the membership of the church, that in the matter of confession as a condition precedent to the participation by members in the sacrament of the Lord's supper, such confession may be made by the members of the church in the manner which is termed "private confession," or in that which is termed "open confession;" such private confession being made by each individual privately to the pastor, and such open confession publicly by all members in church, immediately preceding the reception by them of such sacrament. The court further finds that the only Lutheran synod in the United States

teaching as a doctrine that such "private confession" is the only form of confession permissible as a condition precedent to the reception of such sacrament is the Buffalo synod, but that it permits open confession in some of its mission stations; that, out of about 4,000 Lutheran ministers in the United States, only about 25 are connected with or subject to the jurisdiction of the Buffalo synod; but at all times prior to June 2, 1890, this particular society and congregation practiced private confession.   On June 2, 1890, at a regularly called meeting of the congregation and society, a number of both plaintiffs and defendants being present and taking part in the proceedings, it was then and there voted by a majority of the members present and voting that the society should withdraw from the Buffalo synod, and join the Ohio synod, and said congregation did thereby then withdraw from the Buffalo synod.

It is also found that by the laws, usages, and practice of the Lutheran Church any congregation under the jurisdiction of any of the synods thereof may at any time, by vote of a majority of the members of such congregation, and without the consent of the synod under whose jurisdiction it may then be, withdraw from the synod with which such congregation is so connected, and place itself under the jurisdiction of any other such synod that will receive such congregation.

This society, soon after the meeting last above referred to, made due application to be admitted to the synod of Ohio, which is found to be an orthodox Lutheran synod.

After the vote to connect the society with the Ohio synod, four of the plaintiffs then present publicly withdrew from the congregation, and asked that their names might be stricken from the membership thereof; and subsequently the rest of the persons named as plaintiffs gave notice of their withdrawal, and expressed their determination to remain with the Buffalo synod.   The pastor of the congregation is a member of the Ohio synod.   Since the 2d day of June, 1890, the pastor has granted the sacrament to members of the congregation without requiring them to make private confession, and the practice now is to make open confession; but the privilege of private confession has been and is extended to any member of the congregation

who may desire it, and it is the duty of the pastor, upon request, to receive such private confession, which duty the pastor of this congregation has at all times been ready and willing to perform. There has been no attempt to exclude the plaintiffs, or any of them, from the use and enjoyment of the benefits of the church or school privileges enjoyed by other members of the congregation, or from participation in the management of its business; and there has been no departure from the Lutheran standards of faith or doctrine in the instruction or worship as conducted under the direction of the members who are left in control and possession of the property, or their pastor and officers, unless the change in the method of confession above mention is a departure therefrom.

But it is also found by the court that any Lutheran congregation may at any time, by a majority vote of its members, change the previously established mode of making such confession; that is to say, the method of church confession is not of divine appointment, but either form may be practiced, according to the judgment of each particular congregation, leaving the minister to deal with individual cases as he may deem best in the discharge of his duty as pastor. We have carefully reviewed all the evidence in the case, and are of the opinion that the above statement of facts, drawn from the findings of the court, are supported by the evidence, and that the change in its synodical relations or in its mode of confession, made by vote of a majority of the congregation, as above found, is not contrary to the discipline, usages, or standards of the Lutheran Church. What jurisdiction, if any, the synods or other superior ecclesiastical bodies of the Lutheran Church in the United States may have, to review the decision or proceedings of separate congregations, does not appear in this case. If the action and proceedings of this congregation are subject to review and correction by superior ecclesiastical authority, it would seem that in the first instance the aggrieved parties should seek that method of relief, and the civil courts would accept as binding, as respects matters of doctrine and discipline, the decision of such superior ecclesiastical authority. In the absence thereof, the civil courts, in determining the right of factions in a congregation to the use or enjoyment of its

property, or who are lawfully entitled to hold and control the same, must inquire, upon other competent evidence, whether there has been any substantial departure from the doctrine and discipline of the particular church or denomination constituting the basis of its organization.

The majority of the members of the church in question would have no right to change the law of its organization, or the conditions and implied agreement under which the church property was acquired. It must remain an orthodox Lutheran Church, and its doctrine and discipline must conform to the constitution under which its property has been acquired and the support and contributions of its members have been given and received. The only grounds of complaint on the part of the plaintiffs are the changes voted by the majority of the congregation in favor of a change in their synodical connection, and as to the mode of making confession by the members; but as touching these things the court has found that they did not violate the constitution of the church or the Lutheran standards or usages.

It is alleged in the complaint that at the time of the original organization of the society it was agreed and declared that no matter of doctrine could be changed except by unanimous consent, and that no change whatever could be made in the constitution except by two-thirds majority at a lawful meeting. This is expressly denied in the answer, and the court does not so find.

It was sufficient, in the absence of some other established rule obligatory on this congregation, that the changes made and complained of here were by the votes of a majority. The defendants have done nothing to work a forfeiture of their right to participate in the privileges of the church and school established and maintained by the congregation, and they concede the same rights and privileges to the plaintiffs, and the right and privilege of any individual member to practice either mode of confession, as may be deemed best, under the general discretion of the minister, to be exercised in special cases. Undoubtedly a minority have the right to insist upon carrying out the purposes for which the church or society was organized, and a majority will not be permitted to divert the common property

to other uses, or to use it for the support and maintenance of doctrines òr a polity essentially at variance with its original constitution. The trust must be administered substantially in accordance with the intention of the original founders. But here there has been no violation of the agreement under which the property was acquired. The court cannot, therefore, interfere to restrain the defendants from the enjoyment of the property for the uses to which it has been and is now applied, nor. to order a sale and division thereof between the parties to this action.

The members of this society are not to be treated as partners entitled to a division of the property as upon a dissolution of the partnership, because of the dissatisfaction or withdrawal of a minority, but they are jointly associated for the common purposes; and as long as the property is appropriated to such purposes, and none are prevented from participating in such use thereof, there is no good reason why the voice of the majority should not control in the management thereof, in the absence of a different rule, lawfully established or existing.

Individual members have no interest in such case that they can take with them if they withdrew from the society, nor can they compel a sale and partition to enable them to do so.

In case of a dissolution or amicable or other lawful separation of the membership, the court might interfere to make an equitable division of the property. But no such case is here presented, and there is nothing disclosed by the record in this case to call for the exercise of the equitable powers of the court.

Order affirmed.

(Opinion published 55 N. W. Rep. 49.)