**HUFFHINES et al. v. SHERIFF et al.**

No. 7459—Opinion Filed June 27, 1916.

Rehearing Denied March 20, 1917.

(162 Pac. 491.)

**Religious Societies—Church Property—Division.**

Where' irreconcilable conflict has arisen between members of a church, due to personal differences and not upon any question of faith or doctrine, a judgment apportioning the use of the church property is proper.

(Syllabus by Hooker, C.)

Error from District Court, Harmon County; Frank Mathews, Judge.

Suit between T. M. Huffhines and others and T. A. Sheriff and others. From a judgment awarding relief to both parties with injunction, etc., Huffhines and others bring error. Affirmed.

A. M. Stewart and H. M. Wade, for plaintiffs in error.

W. C. Austin, for defendants in error.

Opinion by HOOKER, C. The evidence introduced here establishes the following state of facts:

That in 1895 the New Bethel Missionary Baptist Church was organized at Louis, Okla.; that said church at the time of its organization adopted the usages, customs, tenets, faith, and doctrine of the regular, properly authorized Baptist Church; and that the same was not departed from, from the time of its organization up to the time of the trial of this action.

The evidence here fails to show that any violation of the faith or doctrine of the Baptist Church is involved; hence the question of departure from the faith and doctrine of the parent organization may be entirely eliminated from this controversy, and, that being true, the forfeiture of property rights on account of such departure or violation is likewise not involved here. The church grew and waxed in strength and power by the persistent and united efforts of its members, until it became a tower of strength in the community where it was located. It not only possessed a large membership, but it was financially well, established, having accumulated, in the community, property consisting of a church house and a parsonage, both of which were well equipped and aggregating in value $3,750. This was the result of unity, brotherly love, and perfect fellowship. In a fatal hour dissensions arose and discord destroyed the fellowship that existed among the members of this church, and, instead of smothering the flame, the members agitated this dissension and fanned the flame of discord until it assumed such magnitude that the church was disrupted and disorganized.

It is apparent that the cardinal principle of this institution, which taught the members to love thy brother as thyself, to agree with thine adversary quickly, and to dwell together in peace and harmony, became a forgotten creed. As the natural result of this confusion in the temple, factions arose and waxed so warm that harmony and fellowship within the church was an impossibility. In fact, the relationship existing between the members of this church became a disgrace to the community in which it was located and a stench alike in the nostrils of saint and sinner. It would serve no useful purpose, if we could, to locate the seat of this trouble. Suffice it to say that the many have suffered for the sins of a few, and that the obstinacy of a few upon each side of this controversy has proved a stumbling block to the unity of this church, as a result of which a great institution, so far as its usefulness is concerned, has been crumbled into the dust. Finally, the members of the church, realizing that fellowship did not exist within the church, that peace and brotherly love did not reign supreme, at one of the regular conferences of the church voted to dissolve it. This was done at a regular stated meeting of the church conference, whereat the active membership of the church was assembled, and of which practically the entire membership of

the church was advised; and we think from the evidence here that it was the deliberate intention of those assembled to bring about the dissolution of the church. It is true that there is some conflict here in the evidence as to whether this vote was thoroughly understood by those there assembled, yet, from this evidence, what was said and done by members of either side of the factions, we are at a loss to understand how any person there assembled could fail to know or to be informed as to the merits of the proposition upon which said vote was taken, and we thoroughly agree with the finding of the lower court that this church at that time and place did dissolve, and that it did have the power and right to dissolve, being an inde pendent body and democratic in its govern. ment. It is apparent that, when the defendants in error organized a new church a few days after this vote to dissolve was taken, they did so, not with any intention of establishing a church in opposition to the old church, either upon a question of faith or numbers, but merely to place themselves in a position to receive and receipt for that part of the property coming to them from the dissolution of the old church, and to hold that the plaintiffs in error, some of whom voted for the dissolution of the church and most of whom were present and cast a vote upon that proposition, could lull the defendants in error into a position whereby they thought they might with safety to themselves, so far as their rights in the parent church were concerned, organize a new body, could take advantage of this situation, and appropriate to themselves the entire property of the parent church, which property the defendants in error had largely contributed to and assisted in building and erecting at great sacrifice to themselves, is so abhorrent to all principles of right and justice, and so contrary to the proper sense of brotherly love and good fellowship that we are not at all surprised at the dissolution of the New Bethel Missionary Baptist Church. The lower court, after having heard this evidence, made the following findings of fact and conclusions of law:

"(1). That the New Bethel Missionary Baptist Church was organized during the year 1895 at Louis post office in, now Harmon county, Okla.

"(2) That for several years there has arisen among the membership of said church a series of dissensions over petty misunderstandings, which have been unduly agitated and fanned by the flame of mutual ill will, until the church was disrupted by a division of its membership into two distinct factions who seemed to oppose each other upon all matters relating to the conduct of the church and its affairs; many members on each side being extremely active in said opposition.

"(3) The court finds that the charge brought by the plaintiffs against the defendants that defendants had become and were in sympathy and affiliation with the 'Landmark Baptists,' and were in opposition to the regular Missionary Baptist Church and the co-operative board plan of distributing the missionary funds, is not proven; and the court finds that none of the defendants have ever, while a member of the New Bethel Church, departed from the doctrine of the regular Missionary Baptist Church, in regard to the distribution of the missionary funds.

"(4) The court further finds that on the 13th day of August, 1906, S. W. Keaton and wife, party plaintiffs herein, deeded to the trustees of said church two acres of land to be used for church purposes, and upon the same there has been erected a church and parsonage fully paid for.

"(5) The court further finds that discord among the members of the church arose and continued, and grew in magnitude, resulting in charges and counter charges against each other, and these charges were discussed in many church conferences and privately whenever the occasion presented itself, and finally the church membership reached the stage where it seems that its differences and misunderstandings were irreconcilable and further church fellowship impossible. Just where and upon whom the blame for this condition should rest it is difficult to fix, and, as far as the decision of this case is concerned, unnecessary to determine who is responsible therefor.

"(6) That on January 24, 1914, at a regular church conference of said New Bethel Church there was assembled, upon motion, a committee of Baptist ministers, none of whom were members of said Bethel Church, called for the purpose of investigating a charge filed against a member of the church, and this committee after being in session for about three days and after hearing the testimony of most of the active members of the church, the said testimony taking a wide scope and relating to the conditions generally in said church, especially to the dissension that had arisen therein on Monday, the 26th of January, 1914, made their report to the church, substantially, 'that they found the church irreconcilably divided into two factions, and that fellowship existed among each faction, but no fellowship existed between the two factions, and recommend a peaceful separation of the two factions of said church,' some of the witnesses contending that the word 'division' and not 'separation' was used in the report.

"(7) That when this report was made that the regular Church Conference convened on the 24th day of January, was still in session, and at the time of the presentation of the report practically the entire active membership of the church was present, as the matter was of intense interest, and all who so

desired were there and participated in the proceedings. Immediately upon the presentation of the report, the members entered into an active discussion of the same, and the membership so understood and tacitly agreed that, if the report received an affirmative majority, it would operate as, and have the effect of, dividing the church, and the vote taken, after the discussion, was 34 in the affirmative and 29 in the negative.

"(8) The court finds that in the government and operation of the Missionary Baptist Church, it is a pure democracy, the majority controlling, and all questions, except those relating to 'Faith and Doctrine,' are decided by a majority vote; and the court further finds that an organized Missionary Baptist Church can be dissolved by a majority vote, and that this can be done at any regular church conference, and that it is not necessary that the members of the church should have previous notice that the question of the division or dissolution of the church would be considered at that particular church conference in order to make the action of the church conference legally binding upon its members.

"(9) The court further finds that the New Bethel Missionary Church was legally dissolved on the 26th day of January, 1914, by the vote of its members present at said church conference, and that it was agreed that the former members of said church should assemble on the following Saturday at 10 o'clock a. m. for the purpose of dividing the church property.

"(10) That many of the plaintiff faction met on Wednesday following, and organized themselves into a new Baptist Church, and that on the following Saturday the defendants met and excluded them from the New Bethel Missionary Baptist Church, which they were then insisting had never been dissolved, and proceeded to take active charge of the church buildings and locked the same up so that plaintiffs could not have access to it, and this suit followed.

"(11) The court further finds that plaintiffs and defendants, being members of the New Bethel Missionary Baptist Church on January 26, 1914, are practically, as near as can be ascertained as to the active resident membership of said church, equally divided in number.

"(12) The court further finds that said church property is worth about $3,750. and the church edifice is worth about $3,000, and that the parsonage is worth about $750.

"Conclusion of Law.

"The decisive question in this case, and practically the only one, is whether or not the action of the members of the church on January 26, 1914, in voting in favor of the proposition submitted to them by the committee, operated to legally divide or dissolve the church organization.

"Voluminous testimony upon immaterial matters herein shed but little light upon this, the main and perhaps the only, question in the case, and a decision of this question decides the case.

"We find as a conclusion of law that neither plaintiffs nor defendants have forfeited their right or interest in the church property, and that the court should make an equitable adjustment of said property rights, or of their right to use and enjoy the same.

"We find that it is impracticable to divide said property between said factions, and believe it is not necessary to resort to the extreme step of directing the sale of said property, and the distribution of the proceeds arising therefrom; but, in order that each faction may use said property for certain periods unmolested by the other faction, the court directs that each side have the use of the church edifice for an equal alternating weekly time, to be used only for Missionary Baptist Church purposes, and the church parsonage is decreed to the defendants for the entire year of 1915, and the plaintiffs for the year 1916, alternating each year thereafter.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs, and the faction associated with them, shall have the sole and exclusive use and enjoyment of the said church building and all other appurtenances connected with said church, including furniture, stoves, books, musical instruments, and all accessories to said church, for the first and third weeks of each month, and the defendants shall have the same use and enjoyment of said property for the second and fourth weeks of each month, said week to commence on Monday and end on Sunday at 12 o'clock p. m.; and it is further decreed that plaintiffs shall have the use and enjoyment of said church edifice for the first fifth Sunday in the year 1915, and for the six days preceding said fifth Sunday and the defendants the second fifth Sunday and six days preceding, the plaintiffs next fifth Sunday, and so on, thus alternating said fifth Sunday.

"It is further decreed that each side is enjoined from interfering with the other in the full enjoyment of said church edifice for the period decreed to them.

"It is further ordered that each side shall pay its own witnesses their fees, and other costs are divided equally between plaintiffs and the defendants, and the church parsonage is assigned to defendants for the year 1915, and to the plaintiffs for the year 1916, alternating each year, the cost of the repairs and upkeep of said property shall be equally divided between both parties.

"To which finding of fact, conclusion of law, and orders and decrees of the court both plaintiffs and defendants except. and exceptions allowed.

"It is further ordered by the court that the above and foregoing orders and decrees

of the court shall continue in full force and effect until such time as plaintiffs and defendants may mutually agree to again become members of the same church organization and worship together in harmony and brotherly love, or until one faction may purchase the interest of the other faction."

The lower court is supported by the evidence here, for many witnesses high in the council of the church, and many distinguished authorities or witnesses upon Baptist doctrine and history, corroborate and sustain the findings of the court.

The sole question presented by this record is to determine what a court of equity should do in order to adjust the differences that have arisen between the factions of this church. These parties contributed of their time and means to the building of this church, and inasmuch as it cannot be charged that either of the factions have abandoned the faith or the doctrine entertained by the church at the time of the contribution, and as they are jointly interested financially as well as otherwise in this property and the community in which they reside, it is a question that appeals to the discretion of the chancellor as to what should be done in order to be fair and just to the parties involved here. We understand the rule to be that, if either party had abandoned the faith or doctrine of the organized church, they would forfeit their interest therein, and the party or faction remaining loyal to the faith or doctrine would be entitled to hold all of the property for the purposes for which the same was created or organized, or, if either party had voluntarily and intentionally withdrawn from the organization, they would forfeit and the other party would be entitled to all of said property; but wo do not find that state of case here. We must deal with these factions as we find them, and deal out to them equal and exact justice despite their faults and their shortcomings.

In Wicks v. Nedrow, 28 Neb. 387, 44 N. W. 458, we find the following notation:

"The church had the right to divide the property between the two factions. Angell & Ames, Corp. sec. 194; Keyser v. Stansifer, 6 Ohio, 363; Wiswell v. Church, 14 Ohio St. 31; Gartin v. Penick, 5 Bush (Ky.) 110. The notice given at a regular Sabbath meeting was sufficient."

And in the body of the opinion we find the following:

"The testimony shows that there is but little or no difference in the doctrines of the two organizations, the principal controversy being over matters of apparently trifling importance; that all parties had contributed to the erection of the building and all seem to have acquiesced in the division of the property and its use. * * * Neither party seceded; but, there being differences which prevented the members from working together harmoniously, they compromised their differences by dividing the property and occupying it on alternate Sundays. This compromise was acquiesced in for so long a period that it should not now be disturbed, and, if from any cause the parties have so far forgotten the teachings of the Master as to be unable to dwell together in unity, then the property should be divided, that each organization may receive its due portion. This the judgment of the court below will accomplish."

In the case of Niccolls et al. v. Rugg et al., 47 Ill. 47, 95 Am. Dec. 462, it is said:

"In case of a division of a religious corporation, both parties still adhering to the tenets and discipline of the organization, the property should be divided between them in proportion to their numbers at the time of such separation."

In the case of Gemeinde et al. v. Keil et al., 61 Kan. 65, 58 Pac. 973, the Supreme Court of Kansas said:

"Where the members of an independent incorporated church organization are nearly equally divided by irreconcilable differences in matters of faith and doctrine, regarded vitally essential by each, and neither faction has forfeited any rights to the property under the constitution of the church, it is not error for a court of equity to decree a sale of the church property and a division of the proceeds arising therefrom among the members."

In the case of Ferraria et al. v. Vasconcellos et al., 31 Ill. 25, it is said:

"(3) So, where such religious body, after having acquired the church property in the manner indicated, became connected with a particular presbytery, from which a majority subsequently withdrew, on account of a schism which arose in the local church on the question of the validity of Roman Catholic baptism, the minority adhering to their presbyterial connection, it was held that whatever may be the ecclesiastical right of a church, or a portion of a church, to sever its connection with a particular presbytery, with or without its consent, it does not follow that the majority, in so acting, become entitled to the property of the church, to the exclusion of the minority. Their rights still remain, and should be adjusted on the principles of equity.

"(4) If the majority have a right to withdraw from the presbytery, so the minority have a right to adhere to it. Neither act works a forfeiture of the rights of either, to the church property, because in neither case has an illegal act been done.

"(5) And all the members, the minority adhering to the former church connection,

as well as the majority who seceded therefrom, being equally beneficiaries of the common property, in case of a separation such as is spoken of, the property should be divided between the two parties in proportion to their numbers at the time of the separation.

"(6) The fact that the majority, after their withdrawal, elected trustees, and the minority made themselves a corporation, and also elected trustees, would not change the aspect of the case; the trustees of neither of those bodies would be regarded as the 'successors in office' of the original trustees named in the deed, so as to take the title to the property, to the exclusion of the others. * * *

"(11) And where neither party has forfeited any right, and the members of the church thus separated are nearly equal in numbers, the property should be divided."

In Wiswell v. First Congregational Church of Cincinnati et al., 14 Ohio St. 31, it is held:

"(7) Such sale and appropriation may be lawfully ordered at the regular annual meeting of the corporation without special notice; and, for this purpose, adjourned sessions of such meeting are but a lawful prolongation of it. * * *

"(13) A conditional separation of the members into two bodies, with the consent and approval of a majority, and founded upon a contemplated division of the church property—the members still continuing to exercise their rights in the corporation—is not a secession."

Applying the rule announced in these cases to the findings and circumstances surrounding the case here, we are of the opinion that the judgment of the lower court fairly and equitably adjusts the differences between these factions of this church, and it is to be hoped that the members of this church will lay aside their differences, for to any fair-minded man it is perfectly apparent from this record that the fault is within themselves, and, if each will engage in the mission of reforming himself before he starts to reform his brother, this church can be united and be a power in the kingdom of God. And to each of them we have only this to say:

"Now, the God of Peace, who brought again from the dead our Lord Jesus, that Great Shepherd of the sheep, through the blood of the everlasting Covenant, make you perfect in every good work, to do his will; working in you that which is well-pleasing in his sight, through Jesus Christ; to whom be glory forever and ever. Amen."

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.