## LOST RIVER NORWEGIAN EVANGELICAL LUTHERAN CONGREGATION AND OTHERS v. JACOB E. THOEN AND ANOTHER.[1]

July 8, 1921.

No. 22,301.

**Religious corporations — division of property by court.**

1. The court has power to make an equitable division of the property

[1] Reported in 183 N. W. 954.

of a religious society when its members separate by mutual consent, owing to an honest difference of opinion, and both parties still adhere to the faith or doctrines of the church and agree upon and attempt to make a division of the property, which is invalid for want of the notice required by section 6598, G. S. 1913.

**Seceders forfeit right in property.**

2. Members who secede from a religious society forfeit their rights in the church property.

**Division proportionate to numbers.**

3. In case the members separate because of honest differences of opinion, but both parties still adhere to the doctrines of the church, the court may divide the property between them in proportion to their numbers at the time of the separation.

**Division proper, even if not asked for.**

4. A division on that basis was proper, though not asked for by either party when the aid of the court was sought to set aside deeds of the property which were executed to accomplish the division which had been agreed upon.

Action in the district court for Polk county to recover possession of certain premises; $100 damages for withholding the same; $25 per month for use and occupation thereof and to cancel deeds and their record as a cloud on plaintiffs' title. The case was tried before Watts, J., who made findings and ordered judgment in favor of plaintiffs that defendants are entitled to retain possession of the church on the condition stated at the top of page 383, infra. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Ole J. Vaule* and *William P. Murphy,* for appellants.

*K. T. Dahlen,* for respondents.

Lees, C.

The Lost River Norwegian Evangelical Lutheran Congregation, one of the plaintiffs in this action, is a religious society incorporated under the laws of this state. The other plaintiffs are its trustees. The defendant Chester Norwegian Evangelical Lutheran Congregation is also a religious society similarly incorporated. In February, 1919, the defendant Thoen obtained a deed of the church property of the Lost River

congregation and subsequently conveyed the property to the Chester congregation. His deed was signed in behalf of the corporation by the president and secretary, and not by the trustees nor by their authority. This action was brought to cancel both deeds and recover possession of the property. The defense was that on January 30, 1919, the members of the Lost River congregation met and agreed that a minority of their number might sever their connection with the congregation and that the property should be divided, the parsonage and 40 acres of land to go to the majority who were to continue to compose the congregation, and the church to go to the minority; that all the members should retain their rights in the cemetery; that the funds of the church societies should also be divided, and that the church had been duly conveyed pursuant to such agreement.

The case was tried by the court without a jury. The findings set out the articles of incorporation of the Lost River congregation. One article states the doctrinal beliefs essential to membership. Another contains a provision that, in case of a division or schism within the corporation, the property shall belong to those who remain faithful to the religious tenets and doctrines stated in the articles. The court found that the congregation, from the time of its incorporation, was affiliated with the Synod for the Norwegian Lutheran Church of America; that prior to 1917 there were two other denominational societies of the Norwegian Lutheran Church, one called the Hauges Synod, and the other the United Norwegian Lutheran Church of America, and that the doctrines of the three societies were substantially the same; that in 1917, for the purpose of uniting the three societies, they organized a Minnesota corporation known as the Norwegian Lutheran Church of America. Thereafter a question arose respecting the relation which the Lost River congregation bore to the new corporation. At a meeting of its members in August, 1917, a motion that the congregation sever all connection with the new corporation was voted on and lost. On January 16, 1919, an informal ballot relating to the same question was taken, and a majority voted in favor of uniting with the new corporation. At a meeting held on January 30, 1919, by a vote of 22 to 6, the members decided that the congregation should join the new corporation. Thereupon the defendant Thoen

and eight others presented in writing a declaration reading in part as follows:

"We . * * * declare that we, for conscience sake are convinced that we are justified in claiming to be the Lost River congregation and therefore have the right to all the property of the congregation, still, we are willing, in order to avoid possible lawsuit, to sever our connection with the congregation on the following conditions:

"1st. That the property of the congregation be divided so that we are allowed to keep either the church and the roads to the church, or the parsonage.

"2nd. That whether we keep the church or the parsonage we shall have full right to the cemetery.

"If the majority is unwilling to accede to  * * *  these conditions, it is our fixed intention to remain as Lost River congregation and continue its work in accordance with its organic law and confession."

By a vote of 16 to 2 (the signers of the declaration not voting as we were informed by the oral arguments), a resolution for a division of the property was adopted. It was resolved to transfer the church to the minority party, and the officers of the congregation were directed to execute the conveyance. Accordingly, on February 7, 1919, the deed to Thoen was made. He took it in trust for the minority, and when they had incorporated he conveyed the property to the defendant corporation. On March 3, 1919, the minority party presented a written statement, declaring that they thereby severed their connection with the congregation, on condition that the division of the property agreed to at the meeting of January 30 be recognized. It was voted to accept such withdrawal and resolved that the advice of the president of the district and of an attorney be obtained to ascertain what should be done if the congregation should lose the church.

The court found specifically that the two parties separated by mutual consent and that both claim to have maintained adherence to the faith, doctrines and discipline of the church according to the articles of incorporation. There is no finding that such claims were not justifiable. Under the division agreed upon, the minority received property and money of the clear value of $1,399, while that retained by the majority was of the value of $2,150. The court held that the deeds were void, but

that defendants were nevertheless entitled to retain possession of the church until a sum was paid to the members of the minority party, bearing 'the proportion to the net value of all the property and funds that 11 bears to the whole number of members immediately before the separation occurred.   The reason given for so holding was that the notice required by section 6598, G. S. 1913, had not been given and, in its absence, a conveyance of the property was unauthorized, but, since there had been a separation of the membership by mutual consent, both parties still adhering to the tenets and discipline of the church, a division of the property between the two parties in proportion to their numbers was justified.   The minority party numbered 11, but the total membership of the congregation was not shown.   The court suggested that proof thereof might be supplied, but it was not.   Plaintiffs moved for a new trial and appealed from an order denying their motion.

We need not decide whether the withdrawal of the minority was such a schism as is referred to in the articles of incorporation or defined in Lindstrom v. Tell, 131 Minn. 203, 154 N. W. 969.   The point is not covered by the findings and we do not know what the evidence showed, for there is no settled case.   The one question before us is whether the conclusions of law are supported by the findings of fact.   The answer depends on the effect on property rights of an amicable separation of the membership of a church into two independent bodies, coupled with an agreement to divide the property, acted upon by the parties thereto but invalid because of some legal technicality.   The question was touched on in Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49, where it was said that the members are not to be treated as partners, entitled upon a dissolution to a division of the property.   So long as the property is appropriated to the purposes for which they associated and none are prevented from participating in its use, the majority control in the management thereof, in the absence of a different rule lawfully established. While the individual members have no interest in the property which they can take with them if they withdraw, yet, in case of an amicable or other lawful separation of the membership, the court may interfere to make an equitable division of the property.

Members who secede from a religious society forfeit all right to any part of the church property.   Whether there has been a secession or not

is a mixed question of law and fact to be decided with a view to all the circumstances, including the acts of the parties and the motives by which they were prompted. Wiswell v. First Cong. Church, 14 Oh. St. 32; Hale v. Everett, 53 N. H. 980, 16 Am. Rep. 82.

In case of a schism, the party remaining loyal to the faith or doctrines of the church is entitled to hold all the property devoted to the propagation of the doctrines of the church. Lindstrom v. Tell, supra; Baptist City Mission Soc. v. Peoples Tabernacle, 64 Colo. 574, 174 Pac. 1118, 8 A. L. R. 102, and note p. 113.

Some courts hold that, upon a division of the membership by reason of honest differences of opinion, both parties still adhering to the tenets, doctrines and discipline of the organization, their common interest in the property continues and their rights may be adjusted fairly and equitably according to the discretion of the court. It may properly be divided between them in proportion to their numbers at the time of the separation. See note to Baptist City Mission Soc. v. Peoples Tabernacle, 8 A. L. R. p. 132; Hale v. Everett, supra; Wiswell v. First Cong. Church, supra; Immanuel's Gemeinde v. Keil, 61 Kan. 65, 58 Pac. 973; Huffhines v. Sheriff (Okla.) 162 Pac. 491; Ferraria v. Vasconcellos, 31 Ill. 25; Niccolls v. Rugg, 47 Ill. 47, 95 Am. Dec. 462; German Cong. Church v. Deutsche Gemeinde, 246 Ill. 328, 92 N. E. 868. In deciding the present case the trial court seems to have been guided by the cases last cited. We do not here express approval or disapproval of their doctrine. Neither do we stop to consider whether the final paragraph of the opinion in Schradi v. Dornfeld, supra, amounts to a qualified approval of the doctrine.

The specific finding that the two parties mutually agreed upon a division of the church property, and the fact that they acted upon the agreement and that their action would have been valid and binding if the requirements of section 6598, G. S. 1913, had been complied with, lead to the conclusion that the district court correctly disposed of the case.

Concretely stated, appellants' position is that the minority have voluntarily withdrawn from and are no longer members of the church, and, under the doctrine of Schradi v. Dornfeld, supra, cannot take any of the property with them. That would be true if they were seceders from the church, but they did not secede.

When once the power of the court to make a division of church property is granted, as it must be under the particular circumstances of this case, little basis is left for criticism of a division in proportion to the membership of the majority and minority parties, respectively. When only personal property is involved, it seems clear that a religious society will be concluded by a division of the property agreed upon. Because no disposition of real property owned by such an organization may be made until notice has been given as required by section 6598, G. S. 1913, as interpreted in Trustees v. Froislie, 37 Minn. 447, 35 N. W. 260, it does not follow that the court, in a proper case, may not accept a division agreed upon by the parties as the basis of its action. When the aid of the court is sought to regain possession of property parted with pursuant to such an agreement, it may, in the exercise of its equitable powers, award to the defendant all or part of the property received under the agreement. The division which was agreed upon in the present case gave the minority a greater interest in the property than the court gave them. The corporation, since the withdrawal of the minority of its members, is composed of those who were willing to divide the property less advantageously to themselves than the court has divided it, and, therefore, neither they nor the corporate entity representing them ought to complain. It is true that the pleadings did not ask for a division of the property. Plaintiffs asked that they be adjudged the owners of all of it; the defendant corporation, that it be allowed to retain what it had received. But the court was not bound to give judgment in accordance with the demand of either party. It was within its power to exercise its own judgment in making a division upon the equitable basis outlined in the decisions above cited.

The order denying a new trial is affirmed.