FIRST ENGLISH LUTHERAN CHURCH et al. v. BLOCH et al.

No. 31920. May 29, 1945.

Rehearing Denied June 19, 1945.

*159 P. 2d 1006.*

James E. Grigsby, of Oklahoma City, for plaintiffs in error.

Blakeney & Blakeney, of Oklahoma City, for defendants in error.

RILEY, J. This is a church controversy. The Evangelical Lutheran Synod of Kansas and Adjacent States is an ecclesiastical corporate entity, incorporated under the laws of Kansas, and is an orthodox synod in the United Lutheran Church in America. The Midwest Synod is also an orthodox synod in the same general church organization. The two synods overlap as to some territory and both have member churches in Oklahoma. The First English Lutheran Church of Oklahoma City is an incorporated religious society of the Lutheran faith in Oklahoma City. It was organized in 1902 and incorporated in 1903 under the laws of Oklahoma. In addition to its corporate charter it adopted a written constitution. Every congregation, to be a part of the United Lutheran Church in America, must be connected with a district synod. For many years the Oklahoma City church was a member of the Kansas Synod.

About 1930 a dissension arose within the congregation. Efforts were made by a committee from the Kansas Synod to reconcile the differences existing in the congregation. These efforts failed.

About February 18, 1942, a meeting of the congregation was called for the transaction of such business as might come before it. At that meeting, by a vote of 94 to 22, a resolution was adopted withdrawing the church from membership in the Kansas Synod and affiliating the church with the Midwest Synod. About February 20, 1942, a copy of the resolution was presented to the President of the Kansas Synod, together with a written request for approval of the resolution. The resolution was referred to the Executive Committee of the Kansas Synod. A copy of the resolution, together with a written request for admission in the Midwest Synod, was presented to the President of that Synod. A special meeting of the Executive Committee of the Kansas Synod was called for February 26, 1942, for consideration of the resolution and request. The Kansas Synod declined to give consent to the withdrawal, declared the parishioners of the Oklahoma City Church who were opposed to the withdrawal to be the congregation of the Oklahoma City Church, Rev. Bloch as pastor was suspended, and the congregation recognized was instructed to convene and choose deacons, elders, and other church officers to administer the affairs of the church. The recognized congregation was directed to call a minister, ordained and approved by the Kansas Synod, to conduct religious services. The President of the Kansas Synod was authorized to do all things necessary to reclaim and maintain all property and other rights of the Kansas Synod in the Oklahoma City Church, even to resorting to the courts.

About March 1, 1942, the President of the Midwest Synod executed and delivered his written directory, under the seal of the Midwest Synod, with the approval of the Executive Committee, by which the First Lutheran Church and

its pastor, Rev. Fred H. Bloch, were received into the membership of the Midwest Synod.

Thereupon, the defendants Doerr, Winneberger, et al., as church officers of said church, took possession of the church property and records, with defendant Bloch as pastor, to the exclusion of the officers and pastor recognized by the Kansas Synod. Thereupon the Kansas Synod commenced an action in the United States District Court against the First English Lutheran Church in Oklahoma City, Fred H. Bloch, pastor, and the church officers, seeking injunctional relief. The Federal District Court held that in attempting to withdraw its membership in the Kansas Synod, the City Church did not follow the procedure of the Kansas Synod and by reason thereof the Kansas Synod, through its proper officials, had disapproved the withdrawal. The court held the congregation recognized by the Kansas Synod to be the legal congregation of the Oklahoma City Church, and permanently enjoined defendants from interfering with the congregation in the possession and management of the church property. Evangelical Lutheran Synod of Kansas v. First English Lutheran Church et al., 47 Fed. Sup. 954. On appeal to the Circuit Court of Appeals, the judgment of the district court was reversed with directions to dismiss the action, upon the ground that the church edifice and other property in question belonged to the church at Oklahoma City; that the Kansas Synod did not have any beneficial interest in the property which would be violated by the transfer of synodical affiliation, and on that account, the amount in controversy was not sufficient to give the Federal court jurisdiction based on diversity of citizenship. First English Lutheran Church of Oklahoma City v. Evangelical Lutheran Synod of Kansas and Adjacent States, 135 Fed. 2d 701.

In the meantime, the Midwest Synod had appealed to the Commission of Adjudication of the United Lutheran Church in America, from the action of the Kansas Synod in denying the right of the Oklahoma City Church to withdraw.

The United Lutheran Church in America consists of the congregations that had theretofore been connected with the General Synod of the English Lutheran Church in the United States; the General Council of the Lutheran Church in North America; and the United Synod of the Evangelical Lutheran Church in the South.

The effect of the decision in that appeal, and other appeals, will be considered.

After the decision of the Circuit Court of Appeals became final, this action was commenced in the district court of Oklahoma county in the name of the First English Lutheran Church of Oklahoma City, a corporation, E. W. Falter et al., claiming to be legal members of the Council of said Church, against Fred H. Bloch, E. C. Doerr, et al., who held possession of the church edifice and other property, to enjoin defendants from exercising any control or dominion over the church edifice and parsonage of the church and from conducting services therein, and from interfering in any manner with the meetings or worship to be held therein by plaintiffs and the congregation they represent. Plaintiffs' petition sets forth the alleged history of the organization of the church and the dissensions which led to the alleged attempt of withdrawal of the church from the Kansas Synod. In substance, the claim of plaintiffs is that the resolution of withdrawal and subsequent admission into the Midwest Synod, without the consent or approval of the Kansas Synod, were illegal and void and directly contrary to the laws, usages, and customs existing within the United Lutheran Church in America and the Synod of Kansas, and that the acts of defendants in excluding plaintiffs and their congregation from the use and possession of the church edifice and parsonage were illegal and contrary to the laws and customs of the United Lutheran Church in America and the Synod of Kansas.

The answer of defendants also pleads the history of the Oklahoma City Church, the dissensions in the congregation, and the decree of the Commission of Adjudication of the United Lutheran Church in America in the matter of the Midwest Synod against the Kansas Synod, dated June 25, 1942. The answer asserts the validity of the withdrawal of the Oklahoma City Church from the Kansas Synod and the affiliation with the Midwest Synod.

At request of both parties, the trial court made findings of fact and conclusions of law. The conclusions were favorable to defendants; judgment was entered denying injunction; taxing the costs against the individual plaintiffs; determining the individual plaintiffs not to constitute the council of said Church, but that the individual defendants, except Rev. Fred H. Bloch, to be the legal church council. Plaintiffs appeal.

Appellants contend that the judgment is not sustained by sufficient evidence and is contrary to law.

Civil courts will not review acts of religious organizations relating solely to internal ecclesiastical affairs for the sole purpose of ascertaining whether they are in accord with the policy, discipline, or usages of the organization. Civil courts will inquire into the regularity of church proceedings only where property rights are involved. First English Lutheran Church v. Evangelical Lutheran Synod of Kansas, 135 Fed. 2d 701; Cage v. Cansler et al., 119 Okla. 36, 248 P. 612; Id., 130 Okla. 70, 265 P. 112.

Civil courts will exercise equitable jurisdiction in a church controversy for the protection of a civil or property right. The jurisdiction to adjudicate an ecclesiastical matter results as a mere incident to the determination of a civil or property right. The courts confine themselves to the facts before them in the particular case. Cape v. Moore, 122 Okla. 229, 253 P. 506.

The Oklahoma City Church adopted a written constitution as its basic law and formula of government and discipline. It provides for church officers who shall be the legal trustees and the body corporate of the church; the church council consists of the pastor, elders, and deacons. The church constitution provides that the "formula of government shall be those of the General Synod of the Evangelical Lutheran Church in the United States" (now the United Lutheran Church in America). The constitution also provides that the church shall always be connected with a district synod. At the time the constitution was adopted, the supreme body of the Evangelical Lutheran Church in the United States of America was known as the General Synod. It consisted of the district synods through the United States of America. About 1918, the United Lutheran Church in America was formed, consisting of the three general Lutheran organizations theretofore existing, namely, the congregations that composed the Evangelical Lutheran Synods which had theretofore been in connection with the General Synod of the Evangelical Lutheran Church in the United States of America; the General Council of the Lutheran Church in North America; and the United Synod of the English Lutheran Church in the South. The Synods of Kansas and the Midwest then became parts of the United Lutheran Church in America. The constitution of that body became the recognized formula of government of the synods and congregations comprising the same. Since then there has been no General Synod. The territorial limits of the two synods overlap and the State of Oklahoma is within the territorial limits of both district synods so that connection with either is sufficient to bring the congregation within the national organization. Each synod has a constitution. United Lutheran Church in America also has a written constitution. Certain parts of the constitution of the Oklahoma City Church and parts of the constitutions of the Kansas Synod and United Lutheran Church in America were intro-

duced in evidence, together with proceedings of the Oklahoma City Church leading up to the adoption of the resolution withdrawing from the Kansas Synod and affiliating with the Midwest Synod. The resolution itself, together with the proof of delivery thereof to the President of the Kansas Synod, was introduced in evidence. Acceptance of the Oklahoma City Church into the membership of the Midwest Synod was also shown. The only question involved is whether the Oklahoma City Church could legally withdraw from the Kansas Synod and join the Midwest Synod without the approval of the Kansas Synod.

The trial court held that no question of change of religious doctrine is involved in this action. The rule governing the civil courts is that whenever the questions of discipline or faith or ecclesiastical rule or custom have been decided by the highest of the church judicatories to which the matter has been carried, legal tribunals must accept such decisions as final and binding upon them in their application to the case before the courts. Watson et al. v. Jones et al., 13 Wall. 679, 20 L. Ed. 666.

The principal and controlling provisions of the several constitutions are:

(1) Article II of the constitution of the Oklahoma City Church:

"Its Doctrinal Basis, and Formula of Government and Discipline, shall be those of the General Synod of the Evangelical Lutheran Church in the United States of America, and it shall always be connected with a District Synod of the said General Synod."

(As noted above, the United Lutheran Church in America is the successor of the General Synod.)

(2) Part of paragraph 1, sec. 2, art. 6, constitution of Synod of Kansas:

"Contemplated changes of its Constitution affecting its articles of faith, adherence to the Synod, and the United Lutheran Church in America, and disposition of its property, shall be reported to the President for his approval."

(3) Section 4, art. 8, constitution of the Synod of Kansas:

"In case of strife or division, should any part of a congregation or pastorate belonging to the Synod reject the faith set forth in Article One, Section II, or revolt against the Constitutional provisions or its obligations as a member of the Synod, that part of the congregation or pastorate, whether majority or minority, of its membership which continues in unity with the Synod and its faith shall be recognized as the lawful congregation or pastorate."

(4) Section 3, art. III, constitution of the United Lutheran Church in America:

"Congregations are the primary bodies through which power committed by Christ to the Church is normally exercised."

(5) Section 3, art. VII, constitution of the United Lutheran Church in America:

"As to Intersynodical Dealings. The United Lutheran Church in America shall have power to address and counsel its constituent Synods for the promotion of intersynodical harmony. Any question of interpretation of law, rights, or principle, that comes within the jurisdiction, or any proper cases referred to it on appeal of a Synod, shall be determined by a Commission of Adjudication hereinafter provided for."

The constructions of these constitutional provisions by highest church judicatory are binding upon the civil courts. Watson et al. v. Jones et al., supra.

The issue of the status of the Oklahoma City Church was appealed to the Commission of Adjudication of the United Lutheran Church in America from decision of the Kansas Synod denying the right of the Oklahoma City Church to withdraw from the Kansas Synod and affiliate itself with the Midwest Synod. The Kansas Synod had adopted a lengthy pronouncement by which it declared that the notice of the

congregational meeting of the Oklahoma City Church in which the resolution of withdrawal from the Kansas Synod was adopted was wholly insufficient in that it failed to state the nature of the business proposed to be transacted.

The Midwest Synod, in its appeal to the commission, presented three questions, as follows:

"1. In order that the congregation The First Eng. Lutheran Church of Oklahoma City might withdraw from the Kansas Synod and join the Midwest Synod, both of which are orthodox synods, was it necessary that the congregation obtain the consent of the Kansas Synod?

"2. Did the Constitution of the above Oklahoma City church require that the purpose of the congregational meeting of February 18, 1942, be stated in the notices of the meeting, as a prerequisite to validity of the resolution to withdraw from the one Synod and join the other?

"3. Is the First English Lutheran Church of Oklahoma City now a congregation within the Midwest Synod?"

These questions were considered by the commission at its meeting in Pittsburgh, Pennsylvania, June 24-25, 1942. The commission found that on February 18, 1942, by a vote of 94 to 22 the congregation of the Oklahoma City Church resolved to withdraw from the Kansas Synod and unite with the Midwest Synod; that on February 20, 1942, by its secretary, the Oklahoma City Church requested the President of the Kansas Synod to grant a letter of transfer from that Synod to the Midwest Synod; that the request was denied by the Executive Committee of the Kansas Synod; that on March 1, 1942, the Executive Committee of the Midwest Synod adopted a resolution admitting the Oklahoma City Church into its membership.

The commission cited the various church constitutional provisions above quoted and also article 1, sec. 3, par. 4, of the Kansas Synod constitution, which provides:

"Every congregation shall be faithful to its obligations to this Synod in all matters of support, practice and church government."

The commission then entered its decision:

". . . that a categorical answer to the first question would involve the determination by it of civil law as well as ecclesiastical law and church polity, since the ultimate decision may depend upon the question of the legal effect of any inconsistencies there may be between the constitution of the Synod and that of the congregation.

"The Commission of Adjudication has therefore confined itself to the pronouncement of certain principles of Lutheran Church Polity in the United Lutheran Church in America."

The pronouncement of the principles of Lutheran Church Polity referred to was:

"According to the polity of the United Lutheran Church in America, congregations are the primary bodies through which power committed by Christ to the Church is normally exercised. Congregations may, however, for certain ends, unite to form synods. A synod is a voluntary organization of autonomous congregations, governed by its fundamental laws. In the making of these laws every constituent congregation has a part through its elected delegates to the conventions of Synod.

"When a congregation has voluntarily united with a Synod, it is under the jurisdiction of such Synod and amenable to its laws, not only while holding membership, but also should it decide to terminate its membership, during the process of such termination. A congregation holding membership in a Synod has a right to terminate its membership, but in so doing it is under obligation to follow such laws and procedure as may be set forth in the constitution and by-laws of the Synod of which it is a member. When a congregation obeys the Synod's laws and follows the Synod's procedure for terminating membership, the Synod, on its part, is under obligation to permit such proper termination of a congregation's membership."

The answer to question 2 was:

"Neither the constitution of the Oklahoma City Church nor the 'Formula for the Government and Discipline of Congregations' of the General Synod requires that the purpose of a special meeting be stated in the announcements of such meeting. Unless such a requirement is specifically set forth, it cannot be held to be a prerequisite to the validity of any action taken at such meeting."

And the answer to question 3 was:

"The principles set forth in answer to question 1 here apply, together with the further principle that no congregation can hold membership in more than one Synod at any given time."

The answer to question 2 held that the call for the congregational meeting of the Oklahoma City Church, held on February 18, was sufficient under the church laws and that said meeting so held was a lawful congregational meeting.

The commission expressly declined to give a direct, categorical answer to questions 1 and 3, apparently for the reason that to do so would involve the determination by it of civil law.

However, the commission made pronouncement of "Church Polity." Therein the commission determined the church polity to be that congregations are the primary governing bodies; that a congregation holding membership in a synod has a right to terminate its membership, but in doing so, it is under obligation to follow procedure as may be set forth in the constitution and by-laws of the synod of which it is a member; and when a congregation follows the synod's specified procedure for termination of membership, the synod, on its part, is under obligation to permit such termination of a congregation's membership. Thus the equitable result is that the Synod of Kansas will be considered as having done that which it ought to have done.

There were two other appeals to the Commission of Adjudication growing out of the controversy. One of them, decided in Pittsburgh, November 10, 1943, concerned only the ministerial status of Reverend Bloch. That question is not involved in this case and the proceeding was properly excluded. The other appeal, decided October 28, 1943, was by the Kansas Synod and submitted three questions, the first of which was whether a congregation of a synod which cannot present a certificate of withdrawal and transfer, be received into membership of another constituent synod. The answer was "No." The second question was:

"Is that part of the congregation recognized by the Synod of Kansas and Adjacent States the rightful congregation of the First Lutheran Church of Oklahoma City?"

The third question was:

"Is the First Lutheran Church of Oklahoma City, Oklahoma, a congregation of the Synod of Kansas and Adjacent States?"

The answers to these questions were:

"In harmony with the established policies of the Commission of Adjudication (See Minutes United Lutheran Church in America, Omaha Convention, 1940, pages 476 and 477) the answer to questions two and three is that the Commission is without jurisdiction."

Thus as a matter of comity between ecclesiastical and lay jurisdictions and the respective limits of each, the highest church authority has deferred the issue involving property rights to the civil courts.

Question No. 1 in the appeal involved a question of comity between synods. It was determinative of the issue in the case at bar and particularly so in view of the ecclesiastical determination of obligation on the part of the Kansas Synod to permit termination of membership with it.

The trial court concluded, as a matter of law, that the Oklahoma City Church under its constitution and corporate charter is an autonomous congregational church as distinguished

from a confederated church. The conclusion is in harmony with the pronouncement of the Commission of Adjudication of the United Lutheran Church in America defining a synod as a voluntary organization of autonomous congregations governed by fundamental law.

The trial court concluded that no change of religious doctrine was involved in this action and that the congregation may transfer its adherence from one synod to another under such circumstances. The conclusion is in accord with the constitution of the Oklahoma City Church and the Kansas Synod as construed by the Commission of Adjudication of the United Lutheran Church in America.

No specific procedure for withdrawal of synodical connection appears to be provided in the constitution or by-laws of the Kansas Synod. Such withdrawal appears to be contemplated in the constitution of the Kansas Synod wherein it is provided that "Contemplated changes of its constitution affecting . . . adherence to the Synod . . . should be reported to the President for his approval." The constitution and by-laws of the Kansas Synod are apparently silent on the question of the duty of the President of the Synod, when he receives notice of the withdrawal from the synod of one of its congregations. Apparently the president, when he received a copy of the resolution and request from the Oklahoma City Church, conceived it to be his duty to refer it to the Executive Committee of the Kansas Synod, and adopted its action.

The issue now presented has been before the civil courts in a number of cases wherein Lutheran Church laws were involved. In every case which has come to our attention it is held that the majority faction of a local Lutheran Church may sever its synodical relation; that judgments are upon the assumption or finding of the civil courts that according to the Evangelical Lu-

theran Polity, the church is independent in government and does not lose its character as such by voluntary association with a synod. In some of the cases, the exact procedure followed by the Oklahoma City Church was held sufficient. Lawson et al. v. Kolbenson et al., 61 Ill. 405, is a case wherein withdrawal of the local congregation from the synod to which it belonged, without the approval and in the face of its express denial by the synod, was held effective.

To the same effect are Duessel v. Proch, 78 Conn. 343, 62 Atl. 152; Schradi v. Dornfeld, 52 Minn. 465, 55 N.W. 49; Lutheran Congregation v. St. Michael's Evangelical Church, 48 Pa. 20; Ehrenfeldt's Appeal, 101 Pa. 186.

Bartholomew v. Lutheran Congregation, 35 Ohio St. 567, concerns a schism in an English Evangelical Lutheran Church wherein the identical questions here involved were decided. It was held:

"A congregation of the Lutheran Church, connected with the district synod of Ohio, had, in 1873, the power to withdraw from that synod; and the right to exercise the power was not affected by the pendency, in the synod, of appeals from the action of the congregation or complaints against members of the congregation.

"By the action of the joint vestry of the Elida and Lima congregations of the Lutheran Church, in October, 1873, followed by the action of the latter congregation in November, 1873, the connection of the latter congregation with the district synod of Ohio was completely severed."

The judgment of the trial court is in conformity with the rules of the highest judicatory authority of the United Lutheran Church in Amercia and the decisions of the civil courts.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and WELCH, JJ., concur. ARNOLD, J., not participating.