JOHAN BENDEWALD et al., Respondents, v. WILHELM LEY, David Klein, Sr., David Eisenbeiss, Matheis Kapp, David Klein, Jr., Friedrich Hinsz, et al., Appellants.

(168 N. W. 693.)

**Courts — jurisdiction — religious questions presented for consideration — doctrinal beliefs — courts have assumed to pass on — schism — what constitutes — constitution — ecclesiastical powers — primary sources of faith — civil courts without jurisdiction — exclusively within ecclesiastical authority.**

1. Where civil courts have assumed to pass upon and decide on the alleged doctrinal beliefs of any given religious denomination either as measured by its own constitution or that of any superior body to which it is attached for religious or ecclesiastical purposes, or where such civil courts attempt to define and decide what constitutes a schism, when examined in the light of the constitution of such religious body, or its ecclesiastical power, authority, or fundamental sources of its faith, belief, or teaching, such civil courts are acting wholly without jurisdiction in all such matters. All such matters are purely

---

Note.—On litigation growing out of schism or division in religious society, see note in 24 L.R.A. (N.S.) 692.

On the question of jurisdiction of civil over church controversies when property or civil rights are involved, see note in 100 Am. St. Rep. 743.

and conclusively of an ecclesiastical nature, and must be determined exclusively by the ecclesiastical authority or judicatories, which exist within all religious organizations.

**Different religious organizations or corporations — property — ownership — possession of — determination of — all doctrinal questions must be settled — before civil courts should take jurisdiction — by ecclesiastical authority.**

2. Where the ownership, possession, or right of possession of property is in controversy between two different religious organizations separately incorporated, though each belong to the same general religious denomination, and before the ownership and right of possession to such property can be determined, doctrinal questions or questions affecting church polity must first be determined, the civil court should not assume jurisdiction of such controversy until it appears that all doctrinal questions and questions of church polity have been acted upon and disposed of by some ecclesiastical authority or power within such religious denomination or society.

**Complaint — absence of allegations as to church polity — except by reference to constitution of such organization demurrable.**

3. Where a complaint in an action such as this contains no allegations as to church polity, except as the constitution of such religious organization affords an indication of its principles and church polity, and there are no allegations of church polity in the complaint supporting such constitution, such complaint is demurrable.

**Complaint — ecclesiastical authority — theology — church polity — beliefs — teachings — absence of allegations relating to — absence of — demurrable.**

4. Where there is no allegation in the complaint that ecclesiastical, theological, or other questions relating to the church polity, beliefs, or teachings of a religious organization, which are involved in the action, and which give rise to a controversy or difference relating to such questions, have been determined by some ecclasiastical authority within such general church organization, a demurrer to such complaint should be sustained.

**Religious organizations — property — ownership or possession — in dispute between — questions of doctrine — teachings — faith — church polity — not involved — civil courts have jurisdiction — may settle such property rights.**

5. Where the ownership, possession, or right of possession of property is in controversy or dispute between religious organizations, and there is not involved for determination in such controversy any questions relative to doctrine, teachings, faith, discipline, or church polity, and there is involved in such controversy only the property right, the civil court has, and should assume, jurisdiction, and determine such property right.

Opinion filed December 19, 1917. Rehearing denied April 2, 1918.

39 N. D.—18.

Appeal from an order of the District Court of McIntosh County, North Dakota, Honorable *Frank P. Allen,* Judge.

Reversed.

*Hugo P. Remington,* for appellant.

Neither the state courts nor the civil courts will determine a question of doctrinal difference, or of church polity, for the sake of permitting or furnishing a basis upon which to predicate a civil action. All questions of doctrine, teachings, beliefs, and theory must first be settled within the church organization. Courts will only determine property rights between two disputing church bodies, when separated from such questions. 34 Cyc. 1185; Mack v. Kime (Ga.) 24 L.R.A.(N.S.) 675; Watson v. Jones, 13 Wall. 666.

There must first be an adjudication of all such questions of church polity by the church organization itself, so that the sole question of the right to the property in dispute may be presented to and determined by the civil courts. Gudmundson v. Thingvalla Lutheran Church, 150 N. W. 750, 754.

*Franz Shubeck,* for respondent.

In this case it is not a question of heresy, but an interest in property, that is involved. Plaintiffs have a temporal right; their property has been taken away from them, and it is the question of their right to do so that is here involved. Gudmundson v. Tingvalla Lutheran Church, 29 N. D. 291, 150 N. W. 250.

Where a certain membership of a church organization withdraw and unite with another, they abandon and relinquish all property rights in the organization from which they withdraw. Godfrey v. Walker, 42 Ga. 563; Bates v. Houston, 66 Ga. 201.

The doctrine that a decision by an ecclesiastical tribunal is conclusive as to its own jurisdiction has been expressly repudiated by a number of our courts. Watson v. Avery, 2 Bush, 330; Gartin v. Penick, 5 Bush, 110; Kinkead v. McKee, 9 Bush, 535; Watson v. Garvin, 54 Mo. 353; Ramsey v. Hicks (Ind. App.) 87 N. E. 1091; Bear v. Heasley, 98 Mich. 279, 24 L.R.A. 615, 57 N. W. 270; Boyles v. Roberts (Mo.) 121 S. W. 805; Associate Reformed Church v. Theological Seminary, 4 N. J. Eq. 77; McAulley's Appeal, 77 Pa. 397; Kerr's Appeal, 89 Pa. 97; Krecker v. Shirey, 163 Pa. 534, 29 L.R.A. 476, 30 Atl. 440; Landrith v. Hudgins (Tenn.) 120 S. W. 783.

That civil courts have jurisdiction and will protect church members in their temporial rights and will also restrain an unwarranted diversion of church property is held in numerous cases. Lindstrom v. Tell, 154 N. W. 969.

A majority of the members of a church corporation, organized as a body of Christian believers of a particular sect, cannot devote or appropriate the property of such corporation to any other use or purpose than that intended and fixed by such church. Franke v. Mann, 81 N. W. 1014; Rottman v. Bartling, 22 Neb. 375, 35 N. W. 126; Krecker v. Shirey, 163 Pa. 539, 29 L.R.A. 476; Kniskern v. Lutheran Church, 1 Sandg. Ch. 439; Hale v. Everett, 53 N. W. 9, 16 Am. Rep. 82; Schradi v. Dornfeld, 52 Minn. 465; Schnorr's Appeal, 67 Pa. 138.

If plaintiffs are right in their contention that the Lutheran Church is a congregated form, each association and independent congregation an autonomous body, the complaint is surely sufficient and the procedure adopted proper. Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49; Fodness v. Brounberg, 73 Wis. 257, 41 N. W. 84; Duessel v. Proch, 78 Conn. 343, 3 L.R.A.(N.S.) 854, 62 Atl. 152; Gudmundson v. Thingvalla Lutheran Church, 29 N. D. 291, 150 N. W. 750; Mack v. Kime, 24 L.R.A.(N.S.) 692; Smith v. Pedigo, 145 Ind. 361, 33 N. E. 777; Brundage v. Deardorf, 92 Fed. 214; 34 Cyc. 1172; Baker v. Dicker, 79 Cal. 365.

GRACE, J. This is an appeal from the order of the district court of McIntosh county, North Dakota, Honorable Frank P. Allen, Judge.

The action brought is one in which it is sought to have decided which of two separate and distinct classes of persons belonging to separate and distinct religious corporations, each of which, however, bears the name and claims its faith to be that which is taught by the German Evangelical Lutheran Emmaus Church, is entitled to possession of, and the exclusive right to use, a certain church building and church property which is more fully described in the complaint.

To the complaint in the case there has been entered a demurrer. In order that the complaint may be fully understood, it, together with the demurrer thereto, will be set out in full.

The complaint as is follows:

"That the defendant, the German Evangelical Lutheran Emmaus

Church of Ashley, McIntosh County, North Dakota, is a domestic religious corporation organized under the laws of North Dakota in August, 1913. That the defendant, the Evangelical Lutheran Emmaus Church of Ashley, McIntosh County, North Dakota, is a domestic religious corporation organized under the laws of the state of North Dakota in February, 1908. That the aforesaid corporations are and at all times hereinafter mentioned have been separate and distinct corporations.

"That the plaintiffs, Johan Bendewald, Sr., Heinrich Ehley, Daniel Bendawald, Johan Bendewald, Jr., are, and at the times hereinafter mentioned were, members of the Evangelical Lutheran Emmaus Church, County of McIntosh, Ashley, North Dakota, together with the following persons defendants herein, Wilhelm Ley, David Klein, Sr., David Eisenbeis, Mathias Kapp, David Klein, Jr., Michael Heddig, Johan Goehring, Freidrich Hinz, Adolph Moench, Christian Goehring, Johannes Goehring, Heinrich Quast, Gottleib Strobel.

"That the German Evangelical Lutheran Emmaus Church, organized in 1913, is joined as party defendant, that the interest of all parties interested in the subject-matter of this action may be fully determined. That the Evangelical Lutheran Emmaus Church of Ashley, McIntosh County, North Dakota, organized in 1908, cannot be induced to bring this suit, it being under the control of the parties complained of, as will appear more fully from the facts hereinafter pleaded, and is therefore made a party defendant in order to determine its rights in the subject-matter under dispute.

"That the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, was organized and chartered under the laws of North Dakota, in February, 1908, for the sole purpose of maintaining and promoting religious worship according to the general usages of the German Evangelical Lutheran Synod of Missouri, Ohio, and other state's churches. That said corporation affiliated itself with the German Evangelical Lutheran Emmaus Church Synod of Missouri, Ohio, and other states (commonly and hereinafter called the Missouri Synod), and since its formation has called and been served by pastors of the Missouri Synod. That said Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, adopted a constitution, a copy of which is hereunto attached and made a part

of this complaint, which was subscribed to by the above-named plaintiffs and persons defendant. That in accordance with the above-stated charter purpose this constitution in paragraphs 3, 4, 7, 10, and 17 contain and adopt the confession of faith, church policy, and practice required of churches affiliated with the Missouri Synod. That said Evangelical Lutheran Emmaus Church of Ashley, McIntosh County, North Dakota, for the purpose stated in its articles of incorporation, a copy of which is hereunto attached and made part of this complaint, and in its constitution, on the 9th day of March, 1908, acquired that tract or parcel of land described below, and erected thereon one frame church building, one shed,. and other buildings to the value of $1,200, to which sum the plaintiffs contributed heavily; the above-mentioned tract of land is described as follows, to wit: Beginning at the northwest corner of the southwest quarter of section fifteen (15), in township one hundred thirty (130), north of range sixty-nine (69), west of the fifth principal meridian, thence running south along the west line of said quarter section, twenty-one rods and nine-tenths of a rod (21.9), thence running east twenty-one rods and nine-tenths of a rod (21.9) parallel to the south line of said quarter section; thence running north twenty-one rods and nine-tenths of a rod (21.9) parallel to the west line of said quarter section; thence running west twenty-one rods and nine-tenths of a rod (21.9) to the place of beginning and containing three (3) acres to be the same more or less. That the Missouri Synod financially aided the said Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, to acquire and erect the above-described property and to maintain the church organization up to the present time in large sums of money, to wit, $1,259, which financial aid was given by the Missouri Synod in consideration of the purpose stated in the articles of incorporation and the stipulations of the constitution of said church, especially in paragraphs 3, 4, 7, 10, and 17.

"That on or about the 27th day of June, 1913, the above-named persons defendant, being a majority, resolved to sever the connection of the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, with the Evangelical Lutheran Synod of Iowa and other states, commonly and hereinafter called the Iowa Synod. (The pleader has evidently made a mistake in using the following words in this paragraph: 'With the Evangelical Lutheran Synod of Iowa and other

states.' He no doubt intended to use the following words: 'With the Evangelical Lutheran Synod of Missouri, Ohio, and other states, commonly known as the Missouri Synod'), against which action the plaintiffs then and there protested and have continued to protest. Whereupon the same defendants in August, 1913, formed a separate religious corporation by name German Evangelical Lutheran Emmaus Church of Ashley, McIntosh County, North Dakota, and as such affiliated themselves with the Iowa Synod. Then meeting again as the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, the same defendants over the plaintiff's protest, resolved to sell, and since have sold, for the grossly inadequate sum of $1, all the above-described property of the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, and as such German Evangelical Lutheran Church of Ashley, the defendants named are now using the above-described property for the purpose of maintaining and promoting religious worship according to the usages of the Iowa Synod, and have by force and threats prevented and continue to prevent the plaintiffs from using said church property for the purposes stated in the articles of incorporation and in the constitution of said Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota.

"That the defendants' acts complained of in paragraph 4 of this complaint and the use of said church property for the purpose of promulgating the Iowa Synod doctrines and worship are in violation of the charter and constitution of the aforesaid Evangelical Lutheran Emmaus Church of Ashley, McIntosh county, North Dakota, and that said acts always have and now do stand disapproved by the Missouri Synod, and all of the said acts of defendants have been against its earnest protest and wishes. That the above-mentioned sale was colorable only, and made fraudulently and in bad faith for the purpose only of defeating the trust placed upon said property by the charter and constitution of said Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota.

"That the Iowa Synod and its pastors do not accept the symbolical books and confessions without reservation as required by paragraphs 3 and 7 of the constitution, but reserve unto itself and its pastors the right to reject and differ with certain doctrines therein, and do so reject and

differ from the following fundamental Evangelical Lutheran Emmaus Church doctrines contained in said confessions and symbolical books; the acteriological doctrines as confessed in articles 2 and 7 of the Formula of Concord; the eschatological doctrines as contained in article 17 of Augsburg Confession and in part 2, article 4, of the Smalcald Articles; the doctrines concerning Sabbath observance as contained in article 28 of the Augsburg Confession, in the smaller and in the larger catechism of Dr. Luther. That the Iowa Synod is not an orthodox Evangelical Lutheran Synod as required by paragraph 7 of the constitution, nor does it maintain and promote religious worship according to the general usages of the Missouri Synod, as required by the charter of the aforesaid Evangelical Lutheran Church of Ashley, County of McIntosh, North Dakota. That the practice of the Iowa Synod concerning admission of members is not the practice required in paragraph 4 of the constitution.

"That the Iowa Synod differs from the Missouri Synod in all these points mentioned in paragraph 6 of this complaint. That the Missouri Synod has determined and for over forty years publicly maintained that the Iowa Synod differed from it in essential particulars regarding doctrines, practice, and church policy as aforesaid, which determination was known to all parties, plaintiffs and defendants in this action, before the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota. In 1908 incorporation for the purpose stated, affiliated with the Missouri Synod, adopted the constitution with the stipulations referred to in paragraph 3 Synod's financial aid in consideration thereof. That the plaintiffs have been recognized and adjudged by the Missouri Synod as remaining true to the original confession as set forth in paragraph 10 of the attached constitution.

"That the Iowa Synod and the Missouri Synod, as stated aforesaid, are two entirely separate and distinct church organizations, having nothing together in common, each being wholly independent of the other. That no application for relief to the higher authorities of the Synod of which plaintiffs are affiliated, to wit, the Missouri Synod, has been made as a decision, decree, or command from said Missouri Synod, would be nugatory and unenforceable and not binding on the defendants herein for the reasons stated aforesaid.

"Wherefore, plaintiffs pray that the above-mentioned sale and con-

veyance be canceled and set aside, and that the court declare and decree that the defendants other than the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, organized in 1908, have no interest of any nature in said church property, that the defendants be restrained from using said church property for the purpose of disseminating the doctrines of the Iowa Synod, and be forever enjoined from doing so, and from interfering with and preventing the plaintiffs and others who have joined him in this action in using the said church property for the purpose intended by the charter and constitution of the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota. For the court to declare and decree that the persons defendant have seceded from and are no longer members of the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, North Dakota, and to grant such other relief and damages as to the court may seem meet and proper."

The demurrer to such complaint is as follows:

"Now appear the defendants, Wilhelm Ley, David Klein, Sr., David Eisenbeis, Mathias Kapp, David Klein, Jr., Johann Goehring, Freidrich Hinez, Christian Goehring, and demur to the complaint of the plaintiff herein, upon the following grounds, all of which appear upon the face of said complaint:

"That the court has no jurisdiction of the subject-matter of the action.

"That there is a defect of parties plaintiff, in this, that the complaint does not show a right in the plaintiff to ask for the relief demanded, nor state that the plaintiffs subscribed to the various creeds set forth in the said complaint as requisite to membership in the church of which they claim to be members, and that said action should be brought by the church of which the plaintiff is a member.

"That there is a defect of parties defendant in this, that the said complaint does not set forth the entire membership of the said congregation, which is necessary to a complete determination of the question involved.

"That there is a further defect of parties plaintiff in that the plaintiff assumes to bring the action on behalf of himself and others, and the others are not named in full, and as to those which are named no authority for the bringing of the action by the plaintiff in their behalf is shown.

"That the complaint fails to state facts sufficient to constitute a cause of action."

The defendants state five grounds in their demurrer upon which they rely. The consideration of these grounds may be grouped by considering them under two heads. Under the first head will be considered the jurisdiction of this court of the subject-matter and the alleged failure of the complaint to state a cause of action. Under the second head may be considered the defects of the parties plaintiff or defendant.

The courts of this state have not been so frequently occupied in considering cases presented to them in which was involved the determination of whether or not a "schism" existed in a religious body. Such cases have not frequently arisen in this state. Such cases, however, seem to have arisen with considerable frequency in other jurisdictions, and there are many decisions of different courts of the various states, many of which assume to pass upon the existence or nonexistence of a "schism" in a religious body or organization, whose religious tenets, beliefs, or doctrinal practices or customs, are presented to such courts for consideration.

We are convinced that where civil courts have assumed to pass upon and decide what are the doctrinal beliefs of any given religious denomination, either as measured by its own constitution or that of any superior body to which it is attached for religious or ecclesiastical purposes, or where such civil court attempts to define and set forth what constitutes a schism when examined in the light of such constitution or ecclesiastical power or regulations, such civil courts are acting wholly without jurisdiction in all such matters, for the reason that all such questions are purely and exclusively of an ecclesiastical nature, which must be determined exclusively by the ecclesiastical authority or judicatories to be found within all religious organizations. We are convinced that in any given case where there is a doctrinal or ecclesiastical question presented, the civil court should not assume jurisdiction until such doctrinal or ecclesiastical questions are disposed of by the proper ecclesiastical authority within such religious organization.

An examination of paragraphs 5, 6, 7, and 8 of the complaint discloses that such paragraphs of such complaint present ecclesiastical and doctrinal questions for our decision.

From the complaint it appears there are two synods,—the Missouri

Synod, which promulgates its religious doctrines and tenets of faith to which the plaintiffs adhere and assert allegiance; the Iowa Synod, to which the defendants adhere, which, according to the complaint, promulgates and teaches doctrines and tenets of faith materially different from that of the Missouri Synod. The plaintiffs claim and allege that the Iowa Synod and its pastors do not accept the symbolical books and confessions without reservation as required by paragraphs 3 and 4 of the constitution, but reserve unto itself and its pastors the right to reject and differ from certain doctrines therein, and do reject and differ from the following fundamental Evangelical Lutheran Emmaus Church doctrines contained in said confessions and symbolical books: The acteriological doctrines as confessed in articles 2 and 11 in the Formula of Concord; the eschatological doctrines as contained in article 17 of the Augsburg Confession, and in part 2, article 4, of the Smalcald Articles; the doctrines concerning Sabbath observance as contained in article 28 of the Augsburg Confession in the smaller and in the large catechism of Dr. Luther. That the Iowa Synod is not an orthodox Evangelical Lutheran Synod as required by paragraph 7 of the constitution, nor does it maintain and promote religious worship according to the general usage of the Missouri Synod, as required by the charter of the aforesaid Evangelical Lutheran Church of Ashley.

We as a civil court are asked to pass upon and determine all of these doctrinal questions. We are asked to determine what doctrines of the Lutheran faith are promulgated by the Iowa Synod and by the Missouri Synod. We are asked to determine the fundamental orthodox doctrines of the Lutheran Church by investigating and examining its symbolical books, its confessions of faith, such as are found in the Augsburg Confessions and portions of the Smalcald Articles, and other fundamental sources of authority upon which such faith rests, and to determine whether or not the defendants have departed from such faith, or which of the two contesting parties to this action is adhering to the orthodox principles of faith. To do this is not within the power of the civil courts, but the passing and deciding upon all such doctrinal questions is exclusively the privilege of some ecclesiastical authority, to be found within such religious denomination, or in some synod or council with which it is associated. Within its own membership such church has many eminent theologians who have devoted their entire life to the

study and analysis of all such doctrinal questions. They have their synods and congregations, and in the one or the other lies ecclesiastical power to determine for themselves as they see best and as meets the approval of their conscience, all these disputed questions of doctrines and tenets of faith, and to them and to their ecclesiastical authority should be left the solution of all such questions. What authority or what right has a civil court to tell any individual when he is digressing from the fundamental principles, authority, or law upon which his faith rests? It amounts to an interference by the civil courts with the right of conscience, and is a long step toward interference with the right of religious liberty and worship.

The 1st Amendment to the Constitution of the United States denies to Congress the power to make any law respecting an establishment of religion, or prohibiting the free exercise thereof. To the same effect is § 4 of article 1 of the Constitution of the state of North Dakota. By each Constitution the civil authorities are denied the right to control or in any manner interfere in purely ecclesiastical matters. So far as the civil authority is concerned, every person within the jurisdiction of the United States may determine for himself all questions which have reference to his relation to his Creator. As was said in the case of Mack v. Kime, 129 Ga. 1, 24 L.R.A.(N.S.) 685, 58 S. E. 184: "No civil authority can coerce him to accept any religious doctrine or teaching or restrain him from associating himself with any class or organization which promulgates religious teachings. Whether he shall adopt any religious views, or, if so, what shall be the character of those views and the persons with whom he shall associate in carrying out the particular views, are all questions addressed to his individual conscience, which no human authority has a right, even in the slightest way, to interfere with, so long as his practices in carrying out his peculiar views are not inconsistent with the peace and good order of society."

The civil authority, both legislative and judicial, are traversing, under our Constitutions, both national and state, in forbidden and prohibited territory when they assume to legislate, or to interpret laws which undertake to define and interpret doctrinal and ecclesiastical questions, so as to be binding upon individuals or interfere with the determination of the individual conscience with reference thereto.

There seems to be two well-defined systems of ecclesiastical authority

or government,—one is the federated, and the other the congregational or independent form. In the former there is a gradation of ecclesiastical government; in the second the right of government is claimed to exist within the congregation. It is claimed in the case at bar that the religious organization in question belongs to the congregational form of government, and that all matters pertaining to church polity and government are to be determined within the congregation. If this be true, it nevertheless remains a fact that there is some tribunal therein where ecclesiastical questions may receive attention. If the congregation be that place, then the ecclesiastical questions must be disposed of there, before a civil tribunal can take charge to enforce property rights which cannot be disposed of properly until there is a disposition of the dispute concerning the doctrinal questions involved. We are of the opinion, however, that the fact that the original congregation was affiliated with the Missouri Synod demonstrates that it recognized some higher ecclesiastical authority to which it was attached for certain purposes. We are of the opinion that among these purposes the very purpose of having a synod is to dispose of just such questions as have arisen in this case. It appears to us, before the original congregation was admitted under the jurisdiction of the Missouri Synod, it was required to submit its constitution to the Missouri Synod and have its approval of such constitution before it was admitted into such synod. One of the purposes for which the synod exists, as we understand the matter, is to afford a tribunal where an opportunity is afforded for disposing of all disputed questions concerning the teachings, doctrines, and beliefs, and is the ecclesiastical authority to determine when members of the congregation are diverging or digressing from the rules of faith, practice, and belief as expressed in the constitution of the congregation, which was required to be approved by the synod before such congregation was admitted under the jurisdiction of such synod. One of two things is certainly true, either such ecclesiastical power is lodged within the congregation or within the synod. In either event there must be a determination upon the doctrinal questions involved, either by the one or the other, before the civil tribunal can undertake to enforce rights of property which depend upon the decision of doctrinal questions or questions of faith, teachings, and practice.

Where the right of property, or the right to possession and use of

property, is involved, and a determination must be made as to which of two contending persons or classes of persons are entitled to such property, or the possession and use thereof, and before such determination can be made by the civil tribunal, a doctrinal question or one relating to the creed or teaching must be also decided, the better rule is for the civil tribunal to require all such questions relating to doctrine and creed to first be decided by some ecclesiastical authority within the religious denomination within which such controversy· arises, and, after such decision by the ecclesiastical authority, the decision of the civil court should permit the property in question to go to the person or persons who were awarded the decision in their favor by the church tribunal or ecclesiastical authority.

The most complicated cases which arise are those in which there is a mere difference in opinion, or divergence of views, between the members of a religious organization as to what are the true doctrines and teachings of the organization, or, in other words, a schism. In all such cases surely no civil court is a proper tribunal to which such issue should be presented. The result is different where there is an abandonment of all the teachings and doctrines of the church, and there is an effort on behalf of some of the members of such church or organization to divert the church property to the promulgation of doctrines, creeds, or teachings entirely different and distinct from that for which the organization was formed, thus eliminating all disputes as to doctrine. In such case the civil court might interfere to protect the rights of the remaining members of the original organization from an entire diversion of the property to uses and practices entirely foreign to the purposes for which such organization was brought into existence. But it is not difficult to see in such class of cases no real doctrinal questions could ever arise, and the taking of such property and diverting it to an entirely different use and purpose from that for which it was intended, might be prohibited on the ground that the original organization held the property impressed with an implied trust for the uses and purposes for which such organization was founded, and if dissatisfied members of such organization sought to devote such property, and have it devoted, to the use of religious doctrines or other doctrines entirely and fundamentally different from that of the original organization, then

such diversion of the property from its original purpose may be prohibited, by a civil tribunal.

Another instance where a civil court might afford a remedy without any action having been taken by any ecclesiastical authority is where the deed which transfers the property to the religious organization reserves therein and expressly sets forth the terms of an express trust to which the property described in such deed is to be dedicated and used, and there is a diversion or attempted diversion of the property to a use and for a purpose entirely different from that described in the express trust. In such case the grantor of the trust, or his heirs, but none other, could restrain the diversion of the property to other uses than those expressed in the deed of trust. In such case there are no doctrinal questions or questions of faith, practice, belief, or schism arising. The question in such case is merely restraining the violation of the terms of an express trust, and the civil courts have jurisdiction and can afford direct relief by an adequate remedy.

In our country there is no state church or state religion, hence, there are no ecclesiastical courts. Whatever ecclesiastical tribunals there are, whether they be councils, synods, or other forms of ecclesiastical tribunals, exist wholly and entirely within the various religious denominations and derive whatever authority they possess from such religious denominations, or the respective members thereof, and, as such ecclesiastical tribunals, they receive no civil authority or power from our government, either under our Constitution or otherwise. Such ecclesiastical tribunals as a rule exercise the authority conferred upon them by their respective organizations in hearing and disposing of questions of discipline, doctrinal disputes, beliefs or teachings, and schisms, as where there is a dispute among the members of the congregation as to matters of doctrine and belief, and as to which of the parties to such dispute are digressing or wandering from the standard rules and regulations of the organization, and as to which are adhering to the principles and tenets of faith as defined by the constitution, symbolical books, or other sources of authority. Such disputes often involve the further question, which of the two contending parties should be entitled to the church property or other property of the organization. Such tribunals have a right to determine all questions concerning faith, teachings, beliefs, and schisms when such questions are presented to them, and in-

cidentally may conclude which of the two contending parties, in the judgment of the ecclesiastical tribunal, is entitled to the possession of the church property; and while such conclusion is in no way mandatory upon the civil tribunal, the civil tribunal will, as a general rule, permit the property to go the way indicated by the conclusion of the ecclesiastical tribunal; and where suit is brought in the civil court for the purpose of acquiring title to such property, or getting possession thereof, the civil court in its judgment will usually award the possession and use of such property to the prevailing party before the ecclesiastical tribunal.

Where the ecclesiastical questions have been disposed of by the authority having jurisdiction of such matters, and there remains the single question as to which of the two contending factions of a religious corporation is entitled to the property, the same principle may be applied which prevails in the case of any corporation not of a religious character; namely, that a mere majority of the members of a corporation cannot divert the corporate property to uses foreign to the purposes for which the corporation was formed. Applying this principle to a church corporation, where the ownership, control, and possession of property, or either of them, is the issue, such church corporation having been formed for the purpose of teaching or promoting certain well-defined principles or doctrines of religious faith, which are set forth in its articles of incorporation, or its constitution, or fundamental law, all the church property that such corporation acquires, immediately upon being so acquired, becomes impressed with a trust for the purposes of carrying out the intents and purposes of such trust in accordance with the purposes for which such religious corporation was organized, and part of the congregation, even if that part be a majority, cannot devest such property of its trust character and divert it to religious uses diametrically opposed to, or inconsistent with, the religious uses and purposes impressed upon such property at the time the church corporation received the same, against the will, without the consent of, and against the protest of the minority, and it is immaterial how small the minority is.

The manner of the use of the church property, where such use is not in excess of the corporate power, and when such use is in accord with the uses and purposes of the church corporation, and in agreement with the faith, teachings, and principles to propagate and promulgate which such church corporation was organized, may be determined by the

majority of the congregation, especially if such church corporation is operated or governed by the congregational or independent form of church government; but no majority, however large, can devote the church property to the teaching of a faith opposed to, or inconsistent with, that of the church corporation from whose teachings the majority may digress or depart, as against the will and protest of a minority, however small; and this for the reason that when the church corporation received the property, such property was impressed with an implied trust for the benefit of, and to be devoted to, the uses and purposes for which such church corporation was organized.

The proper rule in such case as the one at bar we are fully convinced is for the civil courts to confine their jurisdiction exclusively to the one question of property rights, and to determine such property rights only after all doctrinal questions, or questions relating to faith, practice, and teachings of the particular religious denomination involved, have been disposed of by the ecclesiastical authority vested in such religious organization. The safety of this rule becomes manifest when we consider there are several hundred different sects or religious denominations, some of which are within themselves subdivided into various other organizations or associations professing the same general faith, but disagreeing upon the interpretation to be placed upon different matters relating to their particular faith. It will readily be seen that differences of opinion are likely to arise concerning matters of religious doctrine, and which will cause divisions within the organization, and which very often, as in the case at bar, may also present the question, which of the factions are entitled to the possession of the church property. The result is bound to be that the civil courts, if they assume jurisdiction of such matters, will be called upon most frequently, in order to settle property rights, to first decide doctrinal questions. They will be called upon to decide whether a certain faction in the church is complying with the rules, regulations, and doctrines of faith of the church by measuring the compliance of such dissenting faction with the constitution of such church, and determining whether they believe in the fundamental doctrines of faith of such church as defined by its constitution, symbolical books, or other fundamental sources of its faith. Such surely cannot be the duty of civil courts; and for the courts to assume such function would involve it in endless difficulty, and as we have before stated, it would be in clear

contravention of the Constitution both of the United States and of our state. We are fully convinced that the civil courts should confine themselves purely to the consideration of property rights and the protection and enforcement thereof. Neither do we believe that the civil courts should inquire into, nor determine, the jurisdiction of the ecclesiastical tribunals or authority of whatever nature or kind they may be. The jurisdiction of such ecclesiastical tribunals, especially where it relates to ecclesiastical questions, is a matter to be left exclusively to such tribunals, and with which the civil courts are in no way concerned.

As to the second question involved in the demurrer, under the circumstances of this case as alleged in the complaint, we are of the opinion, there are no defect of parties plaintiff, when the pleadings are given a liberal construction. The two respective associations were incorporated. Necessarily, then, there must have been trustees in each corporation. If it were possible, the proper way of bringing the action would have been for the trustees of the corporation of which the plaintiffs remained members, being the first church corporation organized, to bring action against the other corporation; but from the allegations of the complaint, when liberally construed, it appears that this could not be done, as the following contained in the second paragraph of the complaint shows: "That the Evangelical Lutheran Emmaus Church of Ashley, County of McIntosh, organized in February, 1908, cannot be induced to bring this suit, it being under the control of the parties complained of, as will appear more fully from the facts hereinafter pleaded, and is therefore made a party defendant in order to determine its rights in the subject-matter under dispute."

From such allegation it will appear that the authorities or trustees within such corporation could not be induced to bring the action. In such case any member of the corporation for himself and on behalf of all others similarly situated, who desire to join as plaintiffs, or who desire to participate in the benefits of such litigation, could join as plaintiffs. However, the allegations should be clear that the trustees of the organization to which the plaintiffs belong not only could not be induced to bring the suit, but refused to bring such suit. Such refusal to bring such suit could be shown by the neglect of the trustees to bring such suit within a reasonable time after demand made upon them to bring such suit. We are of the opinion, however, that even though it be

39 N. D.—19.

construed there is not any defect of parties plaintiff, there is a defect of parties defendant, for the reason that the suit should have been brought against the corporation organized in 1913, and not against the members of such corporation. Corporations act in their corporate capacity, and are to sue and be sued in their corporate capacity, unless, as in the case of the plaintiffs herein, there is a legal excuse why the action cannot be maintained by the corporation itself. The defendants are all members of the corporation organized in 1913. If the corporation of which they are members were made a party defendant, the members of such corporation would have been bound by the result of the judgment.

The complaint presents doctrinal questions which are in controversy between the parties. The doctrinal questions must be disposed of by some ecclesiastical authority or tribunal before the civil courts should act and render their judgment determining the ownership and possession, or right of possession, of the property. There is no allegation in the complaint that the doctrinal questions in controversy have been submitted to any ecclesiastical tribunal, or any decision had from such tribunal of such doctrinal questions. It appears from the face of the complaint that there has been no such submission of such doctrinal questions to any ecclesiastical tribunal, nor any decision thereon from any ecclesiastical tribunal. This being true, the complaint is fatally defective, and the civil court should not undertake to determine the possession or right of possession of the property in question until all doctrinal questions are disposed of by some ecclesiastical tribunal.

The complaint clearly presents a dispute or controversy between two church associations or organizations relative to doctrinal beliefs, certain religious teachings, and religious beliefs as measured by the constitution of the church association first organized, and the symbolical books and fundamental sources of authority of the faith of the Lutheran Church. The complaint in effect alleges and presents a schism or heresy by the religious society herein subsequently organized as measured by the fundamental authority hereinbefore mentioned, which the first church organization accepted as the foundation of its faith and belief. The demurrer has the effect to admit the existence of the dispute and controversy in reference to the schism, heresy, doctrinal beliefs, etc. It is clear, therefore, that before the property question can

be disposed of, all of such disputed doctrinal questions must also be properly met and disposed of. Truly then, there can be no dispute under this state of facts but that there is presented to the civil court by this complaint all those disputed doctrinal questions for decision, and which must first be decided before any proper disposition can be made of the property involved. We are clear that all such disputes and controversy relating to such ecclesiastical questions should not be decided by the civil courts but by some ecclesiastical authority, which, as we have before stated, exists within all religious denominations in some form or another, and the civil courts should not assume jurisdiction to dispose of the property interest where its determination of the property question carries with it a decision upon the ecclesiastical questions above referred to. The civil courts have jurisdiction to determine property rights between different religious organizations the same as between other persons or parties where there is not presented with the question of property right questions of heresy, schism, or questions of church polity, doctrinal beliefs, etc., upon which must be decided, and upon which right to the property is dependent.

We are fully convinced that the demurrer in this case must be sustained, for the reasons we have heretofore fully set forth.


BIRDZELL, J. (concurring). A thorough study of the complaint, including the constitution and the articles of incorporation of the original Evangelical Lutheran Emmaus Church congregation of Ashley, North Dakota, has served to convince me that the demurrer to the complaint must be sustained. The basic ground upon which this conclusion is based is that the complaint contains no allegations of the ultimate facts upon which the decision of this case upon its merits must be based. The complaint is wholly devoid of allegations as to church polity, except as the constitution affords an indication of its principles of government, and without allegations supplementing the constitution in this particular, and without evidence in support of such allegations, it cannot be determined ultimately whether or not the defendants have exceeded the power vested in them as executive officers and members of the congregation. A plaintiff in an action of this character should not leave open to conjecture the matter of the minority right, upon which the claim to relief is based. The weakness of the complaint becomes manifest when it is examined with reference to its significant omissions.

First: There are no allegations that the congregation of the German Evangelical Lutheran Emmaus Church ever attached itself or sought to attach itself inseparably to the Missouri Synod. It is stated in the articles of incorporation that "this corporation is founded for the purpose of maintaining and promoting religious worship according to the general usages of the German Evangelical Lutheran Synod of Missouri, Ohio, and other state's churches," but this statement in the articles of incorporation falls far short of committing the congregation to an indissoluble union with the particular Synod mentioned. It is generally recognized by the authorities that a church whose form of government is congregational rather than federated or, more properly speaking, centralized, may affiliate with any Synod, conference, or group within the denomination of which it is a constituent element. See Lawson v. Kolbenson, 61 Ill. 405; Duessel v. Proch, 78 Conn. 343, 3 L.R.A. (N.S.) 854, 62 Atl. 152; Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49; Wehmer v. Fokenga, 57 Neb. 510, 78 N. W. 28; Heckman v. Mees, 16 Ohio, 583; Fadness v. Braunborg, 73 Wis. 257, 21 N. W. 84. Furthermore the subject-matter of this provision in the articles is more appropriate for a by-law than for the permanent articles. Comp. Laws 1913, § 5009; 34 Cyc. 1117, 1118.

Second: It appears by article 11 of the constitution that the congregation reserved to itself the "supreme power in the external and internal management of its own ecclesiastical and congregational affairs," and provided that no decision or enactment in behalf of the congregation or with reference to a number thereof, as such, should be valid, unless enacted in the name of the congregation or according to the power confessed by the congregation. As a limitation upon the powers of the congregation in these matters, it was stated that *"not even the congregation* shall be empowered to enact or decide anything contrary to the word of God and the symbols of the Lutheran Church, and any such enactment or decision shall be null and void." It is apparent from this article that it was the intention of the congregation that it should exercise large powers of control over its own affairs, both temporal and ecclesiastical, and that it should have power to arrange its external ecclesiastical connections. It is also apparent that the congregation was regarded as the supreme governing authority in such matters. The article is en-

titled "Church Government," and the sentence which limits the power of the congregation begins with the significant expression, *"but not even the congregation shall be empowered,"* etc. The manifest implication of this language is that there is no power in church government above the congregation. But as to this I express no opinion. The strength of the language quoted only points to the necessity of allegations of church polity. The limitation upon the powers of the congregation in these particulars does not refer in any way to the Missouri Synod or to any other synod. Apparently, it only limits the congregation to decisions which shall be within the word of God and the symbols of the Lutheran Church. I do not understand that any particular synod professes to include the whole of the Lutheran Church. In calling attention to these matters, it is not meant to indicate that this paragraph of the constitution is necessarily to be taken as the sole expression of church polity, but in view of the expressions referred to, which are certainly exceedingly broad, and in view of the further fact that the authorities which have had occasion to deal with controversies arising within the Lutheran Church have regarded the church as adhering to the congregational form of government, the necessity of allegations showing wherein the congregation has transgressed its power becomes apparent. It is not alleged anywhere in the complaint that the congregation has decided any question contrary to the word of God and the symbols of the Lutheran Church.

Third: It is not alleged in the complaint that the theological questions giving rise to the differences between the plaintiffs and the defendants have been determined by any ecclesiastical authority whatsoever. All that is alleged in this connection is that the plaintiffs have been recognized and adjudged by the Missouri Synod as remaining true to the original confession as set forth in paragraph 10 of the constitution. This does not amount to an allegation that the Missouri Synod is the properly and regularly constituted church tribunal for the decision of such questions; that a controversy within its jurisdiction was submitted to it, and that such controversy was decided adversely to the defendants and in favor of the plaintiffs. Before the decision of the Synod can be given any weight, the jurisdictional facts and a determination of the cause must be alleged in the complaint.

Without allegations of fact in the complaint, touching the matters

above referred to (and the plaintiffs are required to prove only the allegations in their complaint in order to obtain the relief sought from the defendants), it is apparent that the civil courts will be driven to the necessity of determining purely ecclesiastical questions. The law does not contemplate that courts shall be driven to this necessity where there is any ecclesiastical judicatory within the church for the decision of such questions. In order to avoid making theological questions of law or fact for the determination of civil courts, it has become a well-established principle, applicable to cases of this character, that where the appropriate church judicatory has determined the ecclesiastical questions involved, the courts are prone to follow such determination. See note to Mack v. Kime, 24 L.R.A. (N.S.) 675, at page 699. If parties can come into court, in the first instance, under allegations alleging heresy as the basis for the determination of property rights, and ask to have the question of the alleged heresy determined for the first time in the civil courts, manifestly there would be no longer any necessity for first determining such questions in the appropriate church tribunals; and if a complaint which charges heresy alone as a basis for relief in matters of property rights be held sufficient as against a demurrer, there is no longer anything to prevent purely religious questions from becoming original matters of decision in the civil courts where an allegation of heresy by one party is met with a general denial by the other. According to my understanding of the law, it is a prerequisite to the bringing of an action respecting the right to the use of the property of a church congregation that there shall first have been a determination by some appropriate authority within the church of the ecclesiastical or doctrinal questions at issue between the contending factions; and a complaint which fails to allege the existence of such a tribunal, the submission thereto of the questions involved, and the decision, is fatally defective. See 34 Cyc. 1185, 1186; Wehmer v. Fokenga, 57 Neb. 510, 78 N. W. 28.

It has been suggested that some special significance attaches to the fact that the Articles of Incorporation of the Evangelical Lutheran Emmaus Church of Ashley stated that the purpose for which the corporation was organized was to maintain and promote worship according to the doctrines and usages of the Missouri, Ohio, and other state's churches. But as previously shown in this opinion, the statement of matter, appropri-

ate only for statement in a by-law, adds nothing to the force of the charter. See 34 Cyc. 1118. Section 5009, Comp. Laws 1913, expressly provides what the by-laws of a religious corporation may contain. Paragraph 5 of this section states that such corporations may, in their by-laws, provide for "other regulations not repugnant to the law of the state and consonant with the objects of the corporation." Section 4536, Comp. Laws 1913, which is a special section dealing with the matter of by-laws for religious corporations, shows clearly that the legislature contemplated that the officers of a religious corporation should at all times perform their functions "in such manner as may be in conformity with or provided by the general laws, canons, rules, regulations, usages, or discipline of the religious organization to which the members of such corporation are attached." These statutes only serve to emphasize the indispensability of the allegations that are lacking in the instant case. There is nowhere any allegation that the officers of the corporation have not acted in conformity with the general laws, canons, rules, regulations, usages, or discipline of the religious organization to which the members of the corporation are attached. A careful reading of the statutes authorizing the formation of religious corporations convinces me that the legislature has not sought to make of the religious corporation an instrument for the perpetuation of religious dogmas or beliefs, save as this result may be attained in conformity with the usages and discipline of particular religious organizations. The corporation is merely an instrumentality which the association may adopt for the purposes of convenience in the handling of its affairs, and the changing of the corporate name or the obtaining of a second charter by the same society is not a fact of controlling significance in considering the question of the identity of the congregation which at the particular time is using the property in furtherance of its religious objects.

It is also sought to attach special importance to the fact that a substantial money contribution was made by the Missouri Synod. But it is generally held that this fact is of no special significance in determining the question of identity. See First Baptist Church v. Fort, 93 Tex. 215, 49 L.R.A. 617, 58 S. W. 892.

The case of Watson v. Jones, 13 Wall. 679, 20 L. ed. 666, is distinctly not an authority for an implied trust in such a case as the one at bar. The extremely able and oft-cited opinion of Mr. Justice Miller in that

case recognizes that there may be a religious trust of property, which is devoted to some specific form of religious doctrine or belief "by the deed or will of the donor, or other instrument by which the property is held." But it also recognizes that where property is held by a religious congregation "either by way of purchase or donation, with no other specific trust attached to it at the hands of the church than that it is for the use of that congregation as a religious society,"—there being no trust imposed,—"the court will not imply one for the purpose of expelling from its use those who, by regular succession and order, constitute the church, because they may have changed in some respects their views of religious truth." Ibid. Where this situation exists, as is apparently the case here, the question is wholly one of identity, to be resolved according to the usages of the particular religious organization.

It has also been suggested that the complaint alleges a violation of an express trust, but it is quite obvious that the complaint contains no allegations from which it can be inferred that any express trust was created. It is not alleged that there was any trust created by the instrument of conveyance to the church, nor is any trust to be implied from the allegations relating to the original organization of the society. See Watson v. Jones, supra.

The crucial question is the question of identity of the defendants as the members of the religious society. If they constitute the society which is engaged in carrying out the purposes of the original organization, they should not be disturbed in their use of the property to that end. As heretofore indicated, it is difficult to see how this question of identity can be determined according to the general laws, canons, rules, regulations, usages, and discipline of the religious denomination, in the absence of allegations in the complaint showing what these usages are, and the extent to which they have been relied upon and appealed to by the plaintiff.

RoBINSON, J. As the complaint shows, several years ago at Ashley, North Dakota, the four plaintiffs and thirteen defendants were united as brethren of a Lutheran church at Ashley, North Dakota. They erected a church building worth $1,200 and organized in accordance with the Missouri Synod. Later the defendants reorganized in accordance with the Iowa Lutheran Synod and held the church property and refused to permit worship according to the ritual of the Missouri Synod.

Under the statute any three persons may form a religious corporation by filing with the secretary of state articles of incorporation stating the name of the corporation, its location, its duration, the names of its directors, and that it is formed for religious purposes. The articles may not adopt or include any religious creed. That and many other things may be included in the by-laws as provided by statute. The members of the corporation have control of its affairs and property, and they may at their pleasure change both the articles of incorporation and the by-laws. The property and polity of a religious corporation is under the control of the majority, and not the minority, of its members. Manifestly the four members cannot override the determination of the thirteen members. Hence, the complaint does not state a cause of action.

Demurrer sustained.

CHRISTIANSON, J. (dissenting). I fully agree with my associates that civil courts have no ecclesiastical jurisdiction and should not take cognizance of a schism or division within a religious society, unless some property or civil right is involved. I also agree that "so long as the effects of the schism or division are confined to spiritual, religious, ecclesiastical, or theological matters, it furnishes no basis for interference by the civil courts at all, however vitally it may affect the interests of the society as an ecclesiastical or spiritual body." I also believe that where "a religious organization has, under its form of government, a tribunal constituted with jurisdiction to decide differences between its members as to the creed, teaching, or doctrine, the civil courts should not undertake to review or revise the judgment in reference to such matters." And that such decision when properly made ought to be accepted by the civil courts as conclusive upon the question of creed, doctrine, or teaching, regardless of any opinion that the judges of civil courts may entertain as to the correctness of the determination.

The courts, however, recognize that rights of property or of contract of religious organizations are under the protection of the law, and the actions of their members subject to its restraints. They also recognize the principle that property dedicated by way of trust to the purpose of sustaining and propagating definite religious doctrines is held in trust

for and must be utilized for the purpose to which it has been dedicated. Watson v. Jones, 13 Wall. 679, 20 L. ed. 666.

While this does not mean that when the majority members of a religious organization adopt certain changes in doctrine or religious views they thereby become seceders and lose their identity as, or rights in, such organization, even a majority may not (where the members have unalterably bound the organization and dedicated church property to the propagation of certain definite religious doctrines) wholly abandon the tenets so adopted, or abandon the organization itself without losing their interest in the church property. There is a radical difference between an abandonment of the fundamental tenets of a church and a mere difference of opinion among the members of an organization as to what are its true doctrines and teachings. Mack v. Klime, 129 Ga. 1, 24 L.R.A. (N.S.) 688, 58 S. E. 184.

In this state, religious organizations may be incorporated in the manner provided for formation of corporations in general. Comp. Laws 1913, § 5005. Such corporations are placed on the same general basis as corporations organized for educational, benevolent, charitable, or scientific purposes. § 5005, supra.

In the instant case we are dealing with a corporation formed for certain definite purposes, and whose entire property has been transferred, over the protest of minority members, to another corporation for a mere nominal consideration.

The complaint under consideration alleges that in 1908 the plaintiff and defendants associated themselves together and organized a religious corporation under the laws of this state, under the name of the Evangelical Lutheran Emmaus Church of Ashley, the purpose of which, as stated in the articles *of corporation, was to maintain and promote religious worship according to the usages of the German Evangelical Lutheran Synod of Missouri.* That said corporation affiliated itself with the German Evangelical Lutheran Synod of Missouri, and adopted a constitution and confession of faith prescribed by, and required of the the churches affiliated with, said Synod. That in said constitution and confession it as specifically agreed to be beyond the power of the congregation to alter the confession of faith then adopted. That said constitution provided that "if at any time . . . a separation should take place on account of doctrines, the property of the congregation and all the

benefits therewith connected shall remain with those members who shall adhere to the confession set forth (in ¶ 3 of the constitution) and who pledge their ministers and teachers to the same." That this religious corporation acquired certain church property of the value of $1,200; that such property had been purchased almost wholly with moneys contributed by the Missouri Synod for such purpose, and was being devoted to the propagation of certain given doctrines espoused by such synod and set forth in the confession of the local church.

That in 1913 the defendants organized a new and separate religious corporation under the name of *German* Evangelical Lutheran Emmaus Church of Ashley, and as such affiliated themselves with the Iowa Synod; that the Iowa Synod rejects many of the doctrines adopted as fundamental and unalterable in the confession of faith of the Evangelical Lutheran Emmaus Church of Ashley. That the plaintiff is not a member of this latter corporation. That the defendants as members of the Evangelical Lutheran Emmaus Church of Ashley voted to sell and did sell all of the church property of the Evangelical Lutheran Emmaus Church of Ashley to the *German* Evangelical Lutheran Church of Ashley for the grossly inadequate sum of $1.

While there is an implied contract of association among the members of all corporations that a majority may bind the whole body as to all transactions within the scope of the corporate powers, it is of the essence of the same implied contract (even as applied to business corporations) that the corporate powers shall be exercised only to accomplish the objects for which they were called into existence, and that the majority does not control those powers to prevent or destroy the original purposes of the corporation. Thomp. Corp. § 4496.

It is a well-settled principle of law that persons interested in two corporations cannot use their powers as directors or majority stockholders in one to obtain some personal or pecuniary interest for the other corporation at the expense of the minority members of the first corporation. In such cases, where a conflict between interest and duty arises, the courts of equity will scrutinize the transaction with care, and, in case fraud or breach of trust appears, the transaction will be set aside. See Thomp. Corp. §§ 4507, 4512; Cook, Corp. 5th ed. §§ 670, 662.

It should be remembered that the questions on this appeal arise on a demurrer to the complaint. The demurrer admits all facts well pleaded.

The complaint must be liberally construed with a view to substantial justice between the parties. Comp. Laws 1913, § 7458. It seems to me that the facts stated in the complaint, and admitted by the demurrer, are sufficient to require a court to entertain jurisdiction, and entitle plaintiff to some appropriate relief.

BRUCE, Ch. J. (dissenting). I am unable to concur in the majority opinions in the above-entitled case.

I am willing to concede, in fact, I have actually stated in my dissenting opinion in the case of Gudmundson v. Thingvalla Lutheran Church, 29 N. D. 291, 150 N. W. 750, that a civil court can only assume jurisdiction in church matters where property rights are involved. I am also willing to concede that the courts should not attempt to settle theological and ecclesiastical disputes except where it is absolutely necessary, and that whenever such a question has been submitted to and passed upon by a church tribunal the finding of that tribunal should be conclusive upon the courts. I am also willing to concede, as in the case of the so-called Frederickson resolution in the Gudmundson suit, that even though the particular dispute has not been passed upon by the church authorities, a prior ruling on a similar theological or ecclesiastical question should be considered as highly persuasive authority and be followed by the courts.

I also realize that many cases hold that, where the organization of a church is purely congregational and no particular faith or creed is defined in its constitution or deed of trust and no superior body controls, what are legitimate and what are not legitimate church usages, and what doctrines should be taught, is for the majority to determine.

I am, however, firmly of the opinion that when, as in the case at bar, the plaintiff seeks to have a conveyance of church property set aside and the interests of an allegedly seceding faction forfeited therein, property rights are involved and a civil court has jurisdiction of the controversy. I am also of the opinion that when, as in the case at bar, the complaint clearly alleges a departure from the original faith on which membership in the corporation is dependent, and the defendants demur to that complaint, the demurrer admits the facts properly pleaded in the complaint, including the departure from the faith; and that there is, therefore, on such a demurrer, no theological question to decide.

I am also of the opinion that when a complaint, as does the one in the case at bar, clearly alleges the adoption of a church constitution, which recognizes a particular faith, and which provides that in case of a schism those who adhere to that faith shall hold the property, and also alleges the joining with a synod of the same faith, and gifts and contributions to the church both by the synod and the members of the congregation on the strength of this fact of dedication and belief, and that this synod has passed upon the theological question involved though not in a direct controversy between the parties nor in the exercise of appellate jurisdiction over them, and a demurrer is filed which necessarily admits the facts which are properly pleaded, the departure from the faith and the violation of the provisions of the constitution are conceded, and there is again no theological question for the courts to decide.

Under such a state of facts I can see no difference between a case where the church property is given to the congregation by some third party and dedicated by such third party by way of trust to the congregation for the furtherance of certain religious doctrines, and one, as in the case at bar, where the organizers of the church and the seceders themselves dedicate the property to that use by means of a written constitution.

I am of the opinion that the order of the district judge should be affirmed, and that the demurrer was properly overruled.